CHARLES W. KING *v.* PAUL M. GAVER.

[No. 68, October Term, 1938.]

*Decided February 1st, 1939.*

The cause was submitted on briefs to BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Theodore F. Brown* and *William M. Storm,* for the appellant.

*Bruce T. Bair,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

In November, 1932, the appellee, the plaintiff below, purchased at a public sale conducted by Brad McHenry, in Carroll County, Maryland, three Jersey heifer calves, then about six months of age. The calves were sold by McHenry upon a commission basis, at the request, and on behalf, of the appellant, the defendant below.

These calves, together with two older cattle which the appellee purchased at the same sale, were delivered to the farm on which he then resided, and upon which he then maintained a herd of fourteen cows.

The appellee, Paul M. Gaver, testified that, before he purchased the heifers, he was told by Charles W. King, the appellant, that they came from Virginia and were "blood tested," and that at the time he purchased them he noticed they had tags in their ears, but did not know the purpose of the tags, as they "just had numbers on them." Detailing the history of his herd, he stated that

he acquired his first cattle in 1931; that he also purchased three cows from one Weller in 1933; that he moved from Carroll County to Howard County after purchasing the heifers, and that later he transferred a part of his herd, including the three Jersey heifers, to his brother John Gaver's farm, in Frederick County, for grazing purposes. One of the heifers, according to the testimony of the appellee, proved to be free of Bang's disease when tested for that purpose, while the other two did not withstand the test. None of them, however, were actually tested until the fall of 1934, at which time, according to the appellee's testimony, his herd was found to be infected with Bang's disease, and at least ten of his cattle were condemned, resulting in substantial loss to the owner.

It appears from the record that no complaint was ever made by the appellee to the appellant about the alleged diseased condition of the heifers until at least twenty-eight months after the purchase of them; and that then demand for damages was made by the buyer upon the seller, based upon the testimony of Dr. Clinton B. Weagley, a veterinary inspector of Frederick County. Dr. Weagley, in May, 1934, visited the farm of John Gaver, for the purpose of applying the tuberculin test to all cattle found on the latter's farm. He did not test any of the cattle for Bang's disease, but testified that, in the course of his application of the tuberculin test, he examined the ears of two Jersey cows, then over two years old, and found tags in their right ears, which indicated that they were tuberculin passed cattle; and that in their left ears he found aluminum tags, three-eighths of an inch wide and about one and one-half inches long, bearing serial numbers "3133" and "3134," respectively, and each being engraved with the words "Va. Aborter."

At the trial of the case below, the veterinarian testified that he had no personal knowledge as to where the two Jerseys came from, and when asked whether the tags furnished such information as would enable him to definitely testify as to their origin and purport, he stated that: "Under the state veterinarian's signature of Virginia, I

could give it, but that is the only way." When asked whether the tags in question were official tags, his answer was: "I judged them to be such, took them as such; had no reason to doubt otherwise." But nowhere in his testimony did he attempt to give testimony tending to show that the tags were in point of fact official tags emanating from the veterinarian department of the State of Virginia; or that they were issued by that department with reference to the cows to which they were attached.

Describing Bang's disease, Dr. Weagley stated that it sometimes developed in calves as early as three months after birth, and progressed more rapidly in some animals than in others.

The appellee further testified that prior to his purchase of the Jersey heifers, his herd had never been infected with Bang's disease.

When called as a witness in his own behalf, the appellant testified that he purchased the heifers from a stock yard in Baltimore City; that they were delivered from pens in the stock yard entirely separate from certain sections in the yard in which condemned or diseased cattle were kept; that because of this fact he regarded them to be free from disease of any kind, and represented them to be "nice heifers," but that he made no assertion at the sale that they were "blood tested"; that he transported them in his truck from Baltimore to the place at which the McHenry sale was conducted; that they were sold on the same day he purchased them; that he did not examine the ears of the heifers, and that, therefore, if they did have tags in them, he knew nothing about it; and that the first complaint or notice of claim against him, made by the appellee, was not until twenty-eight months after the sale to the appellee.

Further testimony was adduced by the appellant in support of his statement that the three heifers were purchased from the section of the stock yard in which only healthy cattle were kept, by the testimony of the secretary-treasurer of the stock yard, who stated that from his records, on November 19th, 1932, the date on

which the heifers were purchased at the stock yard by the appellant, only two diseased or reactor cattle were sold at the yard, and that they were of heavy weight and were sold to the proprietor of an abattoir.

It was also shown by the testimony of Dr. William R. Crawford, a veterinarian inspector of the United States Government, that he had over a period of many years examined cattle in Carroll County; that he was familiar with the characteristics of Bang's disease; that it was very prevalent in that county and that he had examined the cattle of the appellee for tuberculosis on several occasions but did not notice any cattle in the latter's herd bearing tags indicating them to be infected with Bang's disease.

The case was originally instituted in the Circuit Court for Carroll County, and upon motion of the defendant was removed to the Circuit Court for Frederick County for trial. From a judgment entered in the latter court, upon a verdict for the plaintiff in the sum of $450, this appeal was taken.

Eight exceptions to rulings on evidence were reserved by the appellant, and the ninth and final exception found in the record is to the ruling on the prayers by the trial court, and relates specifically to the granting of the plaintiff's 2nd prayer (the only plaintiff's prayer granted), and the rejection of the defendant's B, C, D, and 2nd prayers. The latter's A and 1st prayers for a directed verdict were offered and refused at the close of the plaintiff's case, and were accordingly abandoned when he proceeded to offer proof in his own behalf; but, nevertheless by his 2nd prayer, offered at the close of all the testimony in the case, the court was asked to direct a verdict for the defendant because there was no evidence in the case legally sufficient to entitle the plaintiff to recover; and as the disposition of the latter prayer, in our opinion, is decisive of the case, it will be first disposed of.

Assuming that King, the seller, did make the statement at the sale that the three heifers he offered were "blood tested," and for the purposes of the demurrer prayer that

assumption must be conceded, we cannot concur in the contention made by the appellee that a reasonable construction of that uncertain term would be to regard it as representing an express warranty on the part of the seller that the heifers were tested for Bang's disease and favorably passed upon. And in the absence of proof of a contrary intention, unless it is shown that the buyer expressly, or by implication, made known to the seller the particular purpose for which the heifers were purchased, and it appears that the buyer relied on the seller's skill and judgment, there was no implied warranty that the heifers would be adapted to dairy and breeding purposes. Sections 34 and 36, article 83 of the Code. Furthermore, sub-section (3) of section 36 provides that if the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed, and it is affirmatively admitted by the buyer in the instant case that he examined the heifers and the tags he saw on them at the time of sale. It is significant that no medical proof of the result of the alleged test for Bang's disease, which the buyer claims to have had made two years after the date of his purchase, was tendered by the plaintiff at the trial below; that no claim for reimbursement or damages was asserted by the purchaser until twenty-eight months after the sale, and at a time when two of the heifers, according to the plaintiff's testimony, had been disposed of, and one of them had favorably reacted to the alleged Bang's test. When it is recalled that, meanwhile, the heifers had been herded with various groups of cattle, on different farms and in different localities, and proof was submitted that Bang's is a contagious disease, that no proof whatever was offered by the plaintiff, designed to identify the tags which the purchaser saw on the heifers on the day of sale, as being the tags which the witness Dr. Weagley discovered on the ears of two of them eighteen months later, and when it is admitted by the plaintiff that one of the heifers stood the Bang's test, the case assumes a state of conjecture which in our opinion did not warrant its submission to the jury.

To hold otherwise would open a field for the practice of fraud by unscrupulous dealers or persons, and especially is this observation apparent when, as in the instant case, at the time of the trial at least two of the heifers had been disposed of by the plaintiff; and the defendant was thereby deprived of an opportunity of having them tested for the purpose of his defense.

The Uniform Sales Act, in force in this state (section 69 of article 83 of the Code), provides as follows:

"The buyer is deemed to have accepted the goods * * * when they have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." *Loeblein v. Clements,* 130 Md. 627, 629, 101 A. 693.

In such state of the record, it is our conclusion that a verdict for the defendant should have been directed, and in view of that conclusion, it is unnecessary to review the rulings of the trial court, as raised by the remaining exceptions.

*Judgment reversed without awarding a new trial, with costs to the appellant.*