# CLARK v. ZAID, INC.

[No. 15, September Term, 1971.]

*Decided October 14, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Jerome M. Bloom,* with whom were *Paul, Perry & Hochberg* on the brief, for appellant.

*Edward L. Putzel* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The only question presently presented for decision is whether summary judgments properly were entered in favor of a seller against a purchaser for the balance of the purchase price and on a counterclaim for the return of the down payment.

It appears that Arianna Clark desired to furnish her dining room and ordered from Zaid, Inc. (apparently from an illustrated catalog) four chairs, $792.00; a table, $497.00; a buffet, $515.00; and a hutch, $610.00. When the tax was added, the total due was $2,500.16. Miss Clark paid $900.16 when the order was given in May 1970, leaving a balance of $1,600.00. Zaid delivered the furniture on July 16, 1970. The same day Miss Clark told Zaid flatly over the telephone that the furniture was severely damaged to the point of being entirely unacceptable and demanded that it take it back and call off the deal. Zaid refused and in August, after it had inspected the furniture, offered to repair it. Miss Clark took the position that the furniture could not be restored to its pristine beauty and serve to glorify her home as she had expected and reiterated her original damands. Almost immediately Zaid sued Miss Clark for the $1,600.00 balance it claimed was due it, and Miss Clark counterclaimed for the $900.16 she had paid with the order. In September employees of a linoleum company badly damaged the buffet while in the course of their work in the Clark apartment. Miss Clark complained to the linoleum company and its insurer delivered to Miss Clark's counsel its draft to the order of Miss Clark and Zaid for $515.00, the full purchase price of the buffet, and took the buffet in order to salvage a part of the payment.

Judge Turnbull gave summary judgment in favor of Zaid for $1,600. He gave no reason on the record but it appears that he was swayed by Zaid's contention that when Miss Clark made claim against the linoleum com-

pany for the damage it had done to the buffet and then delivered the piece to the insurer, she exercised such dominion, control and authority over the furniture as to constitute its acceptance as a matter of law, despite her earlier rejections of it.

We think the summary judgments should not have been granted because there exists a genuine dispute of material fact.

Zaid turns for support to *Loeblein v. Clements,* 130 Md. 627, and *King v. Gaver,* 176 Md. 76, 82. In each case the Court held that the buyer had committed acts inconsistent with the seller's ownership making him liable for the purchase price. In *Loeblein* the buyer made repairs to the goods delivered, and in *King* a portion of the goods (two heifers) had been disposed of before the buyer complained to the seller. Zaid says that the language of the Uniform Sales Act on which the Court relied in both cases is repeated in the Uniform Commercial Code, which is codified as Art. 95B of the Annotated Code of Maryland (1957, 1964 Repl. Vol.), and therefore the law remains as *Loeblein* and *King* found it to be.

In discussing and deciding these contentions the Uniform Commercial Code will be referred to as the Code and all section references without more will be to sections of the Code.

The difficulty with Zaid's contentions is that the Code substantially modified the law on which it relies, and now it is significantly material whether Miss Clark did or did not make an effective rejection of the furniture, and the facts on which the answer would turn are in genuine dispute.[1] If the rejection was warranted and ef-

---

1. Involved in a determination of the buyer's right to reject the furniture as nonconforming goods would be its original quality, the nature and extent of the damage it suffered, whether the damage could be repaired so as to restore the original quality and appearance, and similar factors. The buyer's judgment would have to be exercised in good faith, Code (1964 Repl. Vol.), Art. 95B, § 1-203, whether there is used the buyer's personal judgment test or a reasonable man's judgment test. See a discussion of the point in 2 Anderson, Uniform Commercial Code, p. 158, § 2-601:13 et seq. (2d ed. 1971), and compare First National Realty Corp. v. Warren-Ehret, 247 Md. 652.

fective, the Code imposes on Miss Clark certain duties [2] as well as giving her various privileges and optional rights which could result in her prevailing as defendant and counterclaimant; if the rejection was unwarranted and ineffective she could become liable for the balance of the purchase price, and a trier of fact should determine the issue of rightful rejection on evidence presented to it.

The Code does retain and utilize the concept that there is acceptance of goods by a buyer who does any act inconsistent with the seller's ownership. Section 2-606 deals primarily with original acceptance (before there has been a rejection), 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code,* p. 230, § 1.40 (1964) ; it provides that "(1) acceptance of goods occurs when the buyer * * * (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." Section 2-602(2)(a) says: "After rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller * * *." [3]

' It is these sections of the Code Zaid relies on as a reiteration of the inconsistent acts concept of the Sales Act, which *Loeblein* and *King* recognized and effectuated. Zaid overlooks, however, that the Code makes it plain that a buyer in possession who has rightfully and effectively rejected goods may resell the goods, either for the

2. If the rejection was rightful and effective, under Art. 95B, § 2-602 (2)(b) and (2)(c), Miss Clark as a buyer in possession was under a duty to hold the goods with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them but had no further obligation (being basically a bailee or custodian for the benefit of the seller, 2 Anderson, Uniform Commercial Code, p. 170, § 2-602:7 (2d ed. 1971); 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, pp. 236-237 (1964)), and under § 2-510 the risk of loss is on the seller. Compare William F. Wilke, Inc. v. Cummins Diesel Engines, Inc., 252 Md. 611.

3. A "commercial unit" is defined by § 2-105(6) as "such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture * * *) * * *"; the record does not reveal whether the four different pieces of furniture did or did not constitute a commercial unit.

account of the seller, with the right to reimbursement for expenses and commission, if the buyer has no security interest in the goods, or for the buyer's own account to the extent of his security interest, plus expenses; and his action in either case, if it is exercised in good faith and is reasonable under the circumstances will not constitute acceptance or conversion or serve as the basis of an action for damages. 2 Anderson, *Uniform Commercial Code,* p. 182, § 2-604:4; p. 196, § 2-606:23; pp. 413-415, § 2-711:4 and 5 (2d ed. 1971) ; and 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code,* pp. 241-242, § 1.4003040502 (1964).

Section 2-602(2) expressly makes subsection (a) thereof (which deals with a buyer's exercise of ownership) "subject to the provisions of the two following sections on rejected goods (§§ 2-603 and 2-604)." Section 2-603, which deals with the duties and rights of a merchant buyer, particularly with respect to perishable goods, says in effect: Subject to any security interest in the buyer (subsection (3) of § 2-711), a buyer in possession after rejection shall in the absence of reasonable instructions from the seller with respect to the goods make reasonable efforts to sell them for the seller's account if they are perishable or threaten to decline in value speedily. Subsection (3) of § 2-603 goes on to spell out that such a sale, which is subject to the buyer's security interest, "is neither acceptance nor conversion nor the basis of an action for damages."

Section 2-604 reads:

"Subject to the provisions of the immediately preceding section on perishables if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement as provided in the preceding section. Such action is not acceptance or conversion."

Section 2-711(3) provides:

"On rightful rejection * * * a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred * * * and may hold such goods and resell them * * *."

The official comment recognizes, as the language in § 2-603 (1) clearly indicates, that there could be sales where the sales price would exceed the amount of the buyer's security interest and that as to the excess the sale necessarily would be for the account of the seller. It says the buyer's "freedom of sale is coextensive with that of a seller under this subtitle except that the buyer may not keep any profit resulting from the resale and is limited to retaining only the amount of the price paid and costs involved in the inspection and handling of the goods."

If Miss Clark's rejection of the goods was rightful, her sale of the damaged buffet for its full value was not an exercise of ownership by her that would constitute acceptance or conversion of the goods and she would be entitled to the $515.00 paid by the insurer on account of the $900.16 deposit she made. If the rejection was unjustified and Miss Clark is found to be liable for the unpaid balance of the purchase price, see §§ 2-607 (1) and 2-709, the $515.00 could be applied on the $1,600 she would owe on the unpaid balance of the purchase price.

*Judgments reversed, and case remanded for trial, costs to be paid by appellee.*