## LYNX, INCORPORATED *v.* ORDNANCE PRODUCTS, INC. ET AL.

[No. 12, September Term, 1974.]

*Decided November 6, 1974.*

2

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*H. Norman Wilson, Jr.*, with whom were *Fockler & Wilson* on the brief, for appellant.

*James W. Constable*, with whom were *Constable, Alexander & Daneker* on the brief, for appellees.

O'DONNELL, J., delivered the opinion of the Court.

The appellant, Lynx, Inc. (Lynx), revisits us in its efforts to avoid the finality of summary judgments entered against it in favor of Ordnance Products, Inc. (OPI) and Martin Electronics, Inc. (MEI). Its first incursion resulted in its appeal being dismissed since the order of June 1, 1973, granting summary judgment under the appellees' counts Six, Seven and Eight, did not comply with Maryland Rule 605 a, requiring "an express determination that there is no just reason for delay and . . . an express direction for the entry of judgment" where more than one claim for relief is presented in an action. *Lynx, Inc. v. Ordnance Products, Inc.* [No. 132, Sept. Term 1973, decided January 28, 1974] (unreported opinion).[1]

---

1. The appellees had amended their declaration prior to summary judgment by adding additional counts alleging Lynx's anticipatory repudiation of other parts of their contract which were yet to be performed; additionally, Lynx, after the entry of summary judgment, filed a counter-claim charging that the appellees had rendered a defective

As a prime contractor for the United States government, Lynx, on August 27, 1971, entered into a contract with OPI for the manufacture and delivery to Lynx of 3,000,000 M-213 hand grenade fuzes (P. O. 1070); by addenda and amendments dated February 29 and August 28, 1972, the number of fuzes ordered by Lynx under P. O. 1070 was increased to 4,780,050. In addition to the manufacture of the fuzes OPI agreed to provide labor and material for "strapping" government packing boxes (at $.0037 per fuze).

Lynx similarly contracted on September 17, 1971, with MEI for the manufacture and delivery of 1,647,100 XM-228 hand grenade fuzes (P. O. 1074); that order was supplemented on May 3, 1972, to provide for the production of a total of 2,403,100 such fuzes.

On July 19, 1972, Lynx entered into yet an additional contract with MEI (P. O. 1498) for the manufacture and delivery to it of 2,044,000 M-213 hand grenade fuzes.

Each of the contracts provided for the delivery of the hand grenade fuzes to Perry, Florida; each provided for government inspection of the product prior to shipment from the respective plants of OPI and MEI; and each provided that as payments were received from the United States government, under the prime contracts, by Lynx, or its assignee financing institution (Commercial Credit Business Loan, Inc.), that a portion of such receipts representing the respective billings by OPI and MEI were to be paid unto each of them "on the same day." An appendage to the purchase orders provided a schedule for delivery of the fuzes commencing August 31, 1972, and terminating January 31, 1973.

Both OPI and MEI on March 19, 1973, filed their declaration,[2] coupled with a motion for summary judgment,

performance regarding the production of some of the fuzes, had failed to produce others and tortiously retained material and equipment furnished them by Lynx. We held that the order appealed from was not a final judgment and not within the category of interlocutory orders from which an appeal could be taken.

**2.** The original declaration contained nine counts, the first five were "common counts," counts Six, Seven and Eight alleged a breach of the specific purchase orders. The Ninth count undertook to join as a defendant

against Lynx alleging *inter sese* that the hand grenade fuzes manufactured under the respective purchase orders were delivered to Lynx and accepted as tendered and that Lynx had refused to pay for the delivered and accepted units. OPI asserted that $46,854.72 was due and owing it; MEI claimed $67,066.41.

On April 23, 1973, Lynx filed its general issue plea, as well as an affidavit in opposition to the motion for summary judgment. Lynx's affiant, its vice president, asserted that there was "a genuine dispute" between the parties which was "material to the plaintiffs' claims; " it asserted that purchase order No. 1070 had not been "fulfilled" by OPI in that 118,659 units [manufactured by it] had been rejected by the government; that as a result of the "poor quality of work done" by OPI and its failure to "rework" these rejected units, Lynx's contract with the government was "in danger of being terminated." Lynx similarly asserted in the affidavit that five lots totalling 244,800 of the units produced by OPI, although accepted at the plant, were found unacceptable "when tested further by the Government in the field due to poor quality and substandard materials used."

In connection with the claim by MEI, the affidavit on behalf of Lynx asserted that 317,200 units produced by MEI under purchase orders 1074 and 1498, although accepted by the government at the plant, were similarly later rejected after field testing and that Lynx was in "a position of having to rework or resupply these units to satisfy the Government, keep a good relationship and thereby preventing its contract or contracts from being terminated by the Government. . . ."

Lynx additionally undertook to challenge in its affidavit the unit price payable to OPI under amended P. O. 1070 "for strapping the shipping boxes," alleging that the government had found such price unacceptable.[3]

---

Commercial Credit Business Loan, Inc., alleging an assignment unto it by Lynx and an appropriation of the receipts due OPI and MEI. The demurrer of Commercial Credit Business Loan, Inc., was sustained with leave to amend, but the claim as to it was apparently abandoned and dismissed by the plaintiffs.

**3.** The last paragraph in Lynx's affidavit, apparently in support of its counter-claim — which is not here in issue — asserted that it had supplied

A supplemental affidavit in support of the motion for summary judgment was filed on May 25, 1973, on behalf of OPI and MEI, setting forth a letter dated March 5, 1973, from the vice president of Lynx (its affiant) to both appellees, which stated in pertinent part:

> "Our cash flow has been severely interrupted in the last 60 days, due in part to a quality problem at OPI and MEI resulting in 187,770 units being unacceptable to the Government with a subsequent delay in payments from the Government. We had a 'past due' amount owing OPI and/or MEI of approximately $114,000."

The letter additionally proposed a financial "arrangement" between Lynx and the appellees whereby from the balances paid to Lynx by the government it would remit certain amounts to both OPI and MEI on account of the balance due them, but left an unpaid balance in the amount of $36,876 — without any provision for payment.

The Circuit Court for Cecil County (Roney, J.), holding that under the provisions of Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 2-606 and § 2-607, that there had been an acceptance of the goods by Lynx, entered summary judgment on June 1, 1973, in favor of both OPI and MEI in the total amount of $113,921.13, without apportionment to the respective plaintiffs.

Following our remand, the trial court in compliance with the provisions of Rule 605 a, found that there was "no just reason for delay" and entered final amended summary judgments respectively in favor of OPI for $46,854.72 and in favor of MEI for $67,066.41.[4]

---

inventory to both OPI and MEI, consisting of both materials and parts which the plaintiffs had refused to return. The appellees in their brief state that the inventory allegedly held by OPI and MEI is presently in the custody of the United States pursuant to an order of the U. S. District Court for the District of Maryland based upon a claim by the United States of the superiority of its lien on its contracts with Lynx and the indebtedness of Lynx to it.

4. Counsel for the appellant concedes in his brief that the allegations in the remaining paragraphs of the amended declaration by OPI and MEI are not before us on this appeal.

Lynx here again asserts that it was error for the trial court to have entered the final summary judgments (as amended) against it since a material question of fact — whether quantities of fuzes produced and delivered had been rejected — was raised in the pleadings and affidavits. We do not see it that way and shall this time affirm.

Rule 610 d 1 provides that summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Gildenhorn v. Columbia Real Estate Title Ins. Co.*, 271 Md. 387, 408, 317 A. 2d 836, 847 (1974).

The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not there is an issue of fact to be tried and if there is none, to cause judgment to be rendered accordingly. *Brewer v. Mele*, 267 Md. 437, 298 A. 2d 156 (1972); *Broadwater v. Arch*, 267 Md. 329, 297 A. 2d 671 (1972); *Greenwell v. American Guaranty Corp.*, 262 Md. 102, 277 A. 2d 70 (1971); *Trustees of Broadfording Church of the Brethren v. Western Maryland Ry. Co.*, 262 Md. 84, 277 A. 2d 276 (1971). At the trial level, the purpose of the hearing on the motion is to decide whether a real dispute as to material facts does exist; if the pleadings, depositions, admissions and affidavits (if any) show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted. *Salisbury Beauty Schools v. State Bd. of Cosmetologists*, 268 Md. 32, 300 A. 2d 367 (1973); *Brewer v. Mele, supra; Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 272 A. 2d 42 (1971).

A bare allegation in a general way that there is a dispute as to material facts is never sufficient to defeat a motion for summary judgment. *James v. Tyler*, 269 Md. 48, 304 A. 2d 256 (1973); *Shaffer v. Lohr*, 264 Md. 397, 287 A. 2d 42 (1972); *Melbourne v. Griffith*, 263 Md. 486, 283 A. 2d 363 (1971). General allegations which do not show facts in detail and

8

with precision are insufficient to prevent the entry of summary judgment. *Davis v. Montgomery County*, 267 Md. 456, 298 A. 2d 178 (1972).

Even where it is shown that there is a dispute as to a fact, when the resolution of that factual dispute is not material to the controversy, such dispute does not prevent the entry of summary judgment. *Salisbury Beauty Schools v. State Bd. of Cosmetologists, supra; Shaffer v. Lohr, supra; S. L. Hammerman Organization, Inc. v. Community Health Facilities, Inc.*, 264 Md. 37, 50, 284 A. 2d 599, 605 (1971); *Meola v. Bethlehem Steel Co.*, 246 Md. 226, 239-40, 228 A. 2d 254, 262 (1967). Such a material fact must be one, the resolution of which will somehow affect the outcome of the case. *Rooney v. Statewide Plumbing and Heating-Gen. Contractors, Inc.*, 265 Md. 559, 290 A. 2d 496 (1972); *Parklawn, Inc. v. Nee*, 243 Md. 249, 220 A. 2d 563 (1966).

In connection with a ruling to be made on a motion for summary judgment the function of the trial court is much the same as that which it performs at the close of all the evidence in a jury trial when motions for directed verdict or requests for peremptory instructions require a decision as to whether an issue requires resolution by a jury or is to be decided by the court as a matter of law. *Salisbury Beauty Schools v. State Bd. of Cosmetologists, supra; Rooney v. Statewide Plumbing and Heating-Gen. Contractors, Inc., supra.*

In reviewing the propriety of the grant of a summary judgment we are concerned primarily with deciding whether a factual issue which was material to the resolution of the controversy existed and whether the trial judge was legally correct. *Brewer v. Mele, supra; Rooney v. Statewide Plumbing and Heating-Gen. Contractors, Inc., supra; Brown v. Suburban Cadillac, Inc., supra.* Where the record shows that there was no such genuine dispute as to any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judgment is proper. *Selected Risks Ins. Co. v. Willis*, 266 Md. 674, 296 A. 2d 424 (1972); *S. L.*

*Hammerman Organization, Inc. v. Community Health Facilities, Inc., supra.*

The right of the appellees to judgments against the appellant is clearly controlled by the Maryland version of the Uniform Commercial Code (the UCC), Code (1957, 1964 Repl. Vol.) Art. 95B. Section 2-709 (1)(a) of the UCC provides that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover . . . the price . . . of goods accepted . . . ." *See Clark v. Zaid, Inc.*, 263 Md. 127, 282 A. 2d 483 (1971).

Section 2-606 pertains to the acceptance of goods and provides as follows:

> " (1)  Acceptance of goods occurs when the buyer
>
> * * *
>
> (b) Fails to make an effective rejection (subsection (1) of § 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; . . .
>
> * * *
>
> (2) Acceptance of a part of any commercial unit is acceptance of that entire unit." [5]

Section 2-602 (1) provides:

> " (1) Rejection of goods must be *within a reasonable time* after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." (Emphasis supplied.)

In *Fred J. Miller, Inc. v. Raymond Metal Products Co.*, 265 Md. 523, 290 A. 2d 527 (1972), we held that the continued use of a number of lengths of dredging pipe purchased by Miller

---

5. Official comment No. 1 to § 2-606 states that "acceptance" means "that the buyer, pursuant to the contract, takes particular goods which have been appropriated to the contract as his own, whether or not he is obligated to do so, and whether he does so by words, action, or silence when it is time to speak. If the goods conform to the contract, acceptance amounts only to the performance by the buyer of one part of his legal obligation."

constituted an acceptance. Judge Singley, who delivered the opinion of the Court, stated:

> "Acceptance of goods may result under § 2-606 (1) when a buyer, after reasonable opportunity to inspect, notifies the seller that the goods are conforming or that he will retain them despite their non-conformity. *Webb v. Chevy Chase Cars, Inc.*, 259 Md. 284, 287, 269 A. 2d 810 (1970), or *fails effectively to reject* the goods, or does any act inconsistent with the seller's ownership. It is unnecessary to determine whether Miller's letter of 17 March amounted to an acceptance or rejection of the non-conforming pipe because its continued use of 83 lengths of the pipe after the defect had become apparent . . . was clearly an acceptance, § 2-602 (2)(a); § 2-606 (1)(c)." 265 Md. at 527-28, 290 A. 2d at 529. (Emphasis supplied.)

In *Webb v. Chevy Chase Cars, Inc.*, 259 Md. 284, 269 A. 2d 810 (1970), cited in *Miller, supra,* we held § 2-606 applicable where the appellant had inspected the truck which was the subject of the sale and thereafter accepted it and used it in his business.

In *Clark v. Zaid, Inc., supra,* we held that the entry of summary judgment in favor of the appellee should not have been granted because there existed a genuine dispute of material fact as to whether or not the appellant had effectively rejected furniture which was allegedly severely damaged at the time of delivery. Factually in issue was whether the appellant on the day of the delivery of the furniture had notified the appellee that because of its damaged condition it was entirely unacceptable and demanded that it be taken back, or whether she in making claim upon a linoleum company for damage to the buffet exercised such dominion, control and authority over the furniture as to constitute an acceptance as a matter of law, despite her earlier rejection of it.

Chief Judge Hammond, who delivered the opinion for the Court, stated:

" [I]t is significantly material whether Miss Clark did or did not make an effective rejection of the furniture, and the facts on which the answer would turn are in genuine dispute. [Involved in a determination of the buyer's right to reject the furniture as nonconforming goods would be its original quality, the nature and extent of the damage it suffered, whether the damage could be repaired so as to restore the original quality and appearance, and similar factors. The buyer's judgment would have to be exercised in good faith, Code (1964 Repl. Vol.), Art. 95B, § 1-203, whether there is used the buyer's personal judgment test or a reasonable man's judgment test. See a discussion of the point in 2 Anderson, Uniform Commercial Code, p. 158, § 2-601:13 et seq. (2d ed. 1971), and compare First National Realty Corp. v. Warren-Ehret, 247 Md. 652.] If the rejection was warranted and effective, the Code imposes on Miss Clark certain duties (footnote omitted) as well as giving her various privileges and optional rights which could result in her prevailing as defendant and counterclaimant; if the rejection was unwarranted and ineffective she could become liable for the balance of the purchase price, and a trier of fact should determine the issue of rightful rejection on evidence presented to it." 263 Md. at 129-30, 282 A. 2d at 484-85.

Article 95B, § 2-607, in pertinent part, provides as follows:

" (1) The buyer must pay at the contract rate for any goods accepted.

(2) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the

reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this subtitle for non-conformity.

(3) Where a tender has been accepted

(a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; [6] . . .

\* \* \*

(4) The burden is on the buyer to establish any breach with respect to the goods accepted."

Although the UCC imposes the requirement of notice within a reasonable time of a breach, it does not prescribe any form or content for such notice.[7] Official Comment No. 4 under § 2-607 provides that the content of the notification "need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. . . . The notification . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." *See Smith v. Butler,* 19 Md. App. 467, 311 A. 2d 813 (1973); *Warrens Kiddie Shoppe, Inc. v. Casual Slacks, Inc.,* 120 Ga. App. 578, 171 S.E.2d 643 (1969); *Nugent v. Popular Markets, Inc.,* 353 Mass. 45, 228 N.E.2d 91 (1967). *See also* 67 Am.Jur.2d *Sales* § 730 (1973); 2 Anderson, Uniform Commercial Code § 2-607:25 (2d ed. 1971).

6. Uniform Commercial Code § 1-201 (34) defines "remedy" as "any remedial right to which an aggrieved party is entitled with or without resort to a tribunal." J. White and R. Summers, *Uniform Commercial Code* § 11-9, at 343 (1972), states that " 'Any remedy' within the meaning of Section 2-607 (3)(a) includes ancillary rights such as the right to revoke acceptance under 2-608, as well as the right to damages." Black's Law Dictionary 1457 (4th ed. 1968), defines "remedial" as pertaining to a remedy and a "remedy" as "the means by which a right is enforced or the violation of a right is prevented, redressed, or compensated . . . ." Included among examples of "remedies" is "defense" by act of the party injured.

7. UCC § 1-201 (26) provides that " [a] person *'notifies'* or *'gives'* a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know it . . . ." *See also* 2 Anderson Uniform Commercial Code § 2-607:25 (2d ed. 1971).

Where there has been more than one transaction between the parties some identification of the particular sale or transaction as to which the complaint is made by the buyer must be contained in the notice or the notice would fail of its purpose because the seller then would not understand to what the notice referred. Where there have been multiple transactions between the seller and the buyer the notice of a breach should, as far as it is practical, identify the particular transaction concerning which notification is made. *See* Annot., 53 A.L.R.2d 270, 276 § 6 (1957). This is all the more true when considered with the provisions of § 2-605 (1)(a) which states: "The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach [w]here the seller could have cured it if stated seasonably . . . ." *See* 2 Anderson, *supra*, § 2-607:31.

Where notice of rejection or of breach has been given by the buyer, the sufficiency of the notice and whether it was given within a reasonable time are ordinarily questions of fact based upon all the surrounding circumstances. *Victorson v. Albert M. Green Hosiery Mills, Inc.*, 202 F. 2d 717 (3d Cir. 1953); *Smith v. Butler, supra*; *L. A. Green Seed Co. of Ark. v. Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969). *See also* Annot., 17 A.L.R.3d 1010, 1102-04 (1968); 2 Anderson, *supra*, § 2-607:24. Where, however, the facts are undisputed and but one inference can be drawn therefrom as to the reasonableness of the notice, the question is one of law. *See Tinius Olsen Testing Machine Co. v. Wolf Co.*, 297 Pa. 153, 146 A. 541 (1929) (decided under the Uniform Sales Act).

In *May Oil Burner Corp. v. Munger*, 159 Md. 605, 152 A. 352 (1930), although decided under the provisions of the antecedent Uniform Sales Act, where the purchaser asserted by way of defense a nonacceptance of the goods because of a breach of warranty, our predecessors held, under the then provisions of Art. 83, § 70, of the Code, that a seller should not be liable for a breach of warranty unless the buyer had notified him of such a breach within a reasonable time after

learning thereof, and that proffered jury instructions which omitted any reference to any notice of rejection were defective and properly refused. Judge Offutt, there writing for the Court, stated:

> "But they [proffered instructions] were also defective in failing to refer with more precision to the time when the buyer was required to notify the seller of the supposed defects in the burners. For whether the buyer had accepted the goods or not, she could not rely on a breach of warranty either in recoupment or as a bar unless, within a reasonable time after the breach, she notified the seller thereof (Code, art. 83, sec. 70), unless the seller already had such knowledge of the breach as made such notice unnecessary. *Rittenhouse etc. Auto Co. v. Kissner*, 129 Md. 111." 159 Md. at 616-17, 152 A. at 357.

Although §§ 2-606 and 2-607 define what constitutes and what is the effect of an acceptance of goods, § 2-608 specifies when an acceptance may be revoked. That section provides as follows:

> "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> (a) On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (b) Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. *It is not effective until the buyer notifies the seller of it.*

> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." (Emphasis supplied.)

As conditions precedent to revocation of acceptance under § 2-608 it must first be shown that the goods are nonconforming (*see* § 2-106 (2)) and that such nonconformity substantially impairs the value of the goods to the buyer. After establishing both these conditions it is then necessary, if the buyer knew of the nonconformity when he accepted the goods, to show that he acted on the reasonable assumption that the nonconformity would be cured but it was not seasonably cured (§ 2-608 (1)); if the buyer did not know of the nonconformity when he accepted the goods he must show that his acceptance was reasonably induced, either by the difficulty of discovering the nonconformity before acceptance, or by the seller's assurances (§ 2-608 (1)(b)). Conversely, the buyer cannot revoke his acceptance (1) if he accepted, although he knew of the nonconformity but had no reason to assume that it would be cured; (2) if he did not know of the nonconformity at the time of acceptance because of his own failure to make a reasonable investigation which was readily available; or (3) if following acceptance the seller in fact seasonably cured the nonconformity. *See* 2 Anderson, *supra,* § 2-608:4; J. White and R. Summers, Uniform Commercial Code, Sec. 8-3, at 255 (1972).

While notice of any breach as a basis for rejection of the goods (under § 2-607) preserves the buyer's remedy of damages if given within a reasonable time after the breach was or should have been discovered, revocation of acceptance (under § 2-608) is not accomplished by notice of "any" breach but requires that the notice be given of the nonconformity in the goods materially impairing their value to the buyer and must be given within a reasonable time after the buyer discovers or should have discovered such nonconformity. *See Lanners v. Whitney,* 247 Ore. 223, 428 P. 2d 398 (1967). *See also* 2 Anderson, *supra,* § 2-607:31; J. White and R. Summers, Sec. 8-3, *supra,* at 260; 1 W.

Hawkland, A Transactional Guide to the Uniform Commercial Code § 1.4105, at 245 (1964).

A buyer does not sustain his burden of proving that his revocation of acceptance was justified by his testimony that the machine was returned because it was "unsatisfactory," as that term is held to be too vague. *See Tennessee-Virginia Construction Co. v. Willingham,* 117 Ga. App. 290, 160 S.E.2d 444 (1968), cited in 2 Anderson, *supra,* § 2-608:10. Similarly, because of the requirement of showing "substantial impairment" under § 2-608 there can be no revocation of acceptance merely by proving that there were defects without showing that they "substantially impair the value of the contract." *See Rozmus v. Thompson's Lincoln-Mercury Co.,* 209 Pa. Super. 120, 224 A. 2d 782 (1966), cited in 2 Anderson, *supra,* § 2-608:11.

As with a notice of breach under § 2-607, no particular form or content is specified by the UCC for revocation of acceptance. Official Comment No. 5 to § 2-608 states that the content of the notice is to be determined "by considerations of good faith, prevention of surprise and reasonable adjustment. More will generally be necessary than the mere notification of breach required under the preceding (§ 2-607) section."

The criterion of good faith and the consideration that a speedy inexpensive method of operation is desirable, lead to the conclusion that the form and content of such notice of revocation should inform the seller that the buyer has revoked, identify the particular goods as to which he has revoked and set forth the nature of the nonconformity since such notice would corroborate the buyer's good faith and give the seller an opportunity to make a substitute performance to maintain good will or to avoid litigation. *See* 2 Anderson, *supra,* § 2-608:16.

A notification to the seller within a reasonable period of time is a prerequisite for a rejection by the buyer under § 2-602, a breach under § 2-607 and a revocation of acceptance under § 2-608. Any such notice is ineffective until the buyer notifies the seller. §§ 2-602 (1), 2-608 (2). *See Poole v. Marion*

*Buick Co.*, 14 N.C.App. 721, 189 S.E.2d 650 (1972); *Avant Garde, Inc. v. Armtex, Inc.*, 4 UCC Rep. Serv. 949 (N.Y. Sup. Ct. 1967); Annot., 17 A.L.R.3d, *supra*, 1102-08. *See also Vogel v. Thrifty Drug Co.*, 43 Cal. 2d 184, 272 P. 2d 1 (1954); *W. S. Maxwell Co. v. Southern Oregon Gas Corp.*, 158 Ore. 168, 74 P. 2d 594, 75 P. 2d 9 (1938), holding that notice as a condition precedent to the right to recover must be pleaded and proven. Even though grounds for revocation might otherwise exist there can be no revocation if notification is not made within a reasonable time. See 2 Anderson, *supra*, § 2-608:19.

Since the existence of a right of action is conditioned upon whether notification has been given the seller by the buyer, where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his "remedy." Thus the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated under either §§ 2-607 (3) or 2-608 (2). *See Smith v. Butler, supra*; 2 Anderson, *supra*, § 2-607:28. It follows, in the absence of any evidence of a notification of a rejection or a notification of a revocation of acceptance, when it is asserted for the first time by the buyer by his pleadings in defense of a suit brought by the seller the failure of the condition precedent of notification defeats the buyer's "remedy" (defense).

Applying these principles to the facts of this case we find that the appellees by their pleadings, exhibits and affidavits established that they had manufactured and delivered to Lynx the fuzes contracted for under P. O.s 1070, 1074 and 1498, that the fuzes as tendered had been accepted and Lynx had refused to pay the balances due; we further find that there was no effective rejection of the goods by Lynx under § 2-606 (1)(b), nor any notification of a breach in the warranty of the goods under § 2-607 (3)(a), nor any effective revocation of the acceptance shown under the provisions of § 2-608 (2). Any defense — or any "remedy" — that Lynx might have had under the UCC for a nonacceptance of the goods or for a

breach of their warranty or a revocation of acceptance was predicated, as a condition precedent, upon a notification to the sellers. Notice to the seller is an indispensable ingredient under these sections of the UCC.

The letter dated March 5, 1973, from Lynx to both OPI and MEI [8] stating that Lynx's "cash flow has been severely interrupted in the last 60 days, due in part to a quality problem at OPI and MEI" was equivocal and does not appear at all to relate to the manufacture and delivery of the fuzes under the contracts which were the subject-matter of the proceedings (P.O.s 1070, 1074, 1498); [9] this is all the more apparent when the 187,770 units described in the letter as being "unacceptable to the Government" cannot be reconciled numerically with those quantities of fuzes specified in Lynx's affidavit. The letter acknowledged a current overdue indebtedness to the appellees of "approximately $114,000." [10] The use of the terminology: "due in part to a quality problem at OPI and MEI" cannot here be construed or extended to suggest either a rejection of acceptance of the fuzes delivered under the schedule of deliveries, nor a notification of a breach of warranty, nor a revocation for nonconformity, much less constitute an identification of the particular contract, sale or transaction concerning which complaint was therein attempted by the buyer.

The bald assertion in Lynx's affidavit that there was a "genuine dispute" between the parties which was "material to the plaintiffs' claims" was insufficient to defeat a motion for summary judgment.

When, for the first time, in answer to the appellees' motions for summary judgments, Lynx undertook to assert by its affidavit that a number of units, accepted by the

---

8. Included in the appellees' supplemental affidavit in support of their motions for summary judgments.

9. The counter-claim filed by Lynx makes reference to the manufacture and delivery of other fuzes by the appellees under P. O. 1071, dated November 30, 1971, P. O. 1551, dated October 23, 1972, P. O. 1557, dated November 25, 1972 and P. O. 1560, dated January 8, 1973.

10. The judgments entered in favor of OPI and MEI total $113,921.13.

government after inspection (at OPI and MEI), had later been rejected "when tested in the field" such factual averments cannot as a matter of law constitute the notification required for rejection, for breach of warranty, nor — conceding acceptance — notice of revocation. Although Lynx for the first time in its affidavit undertook rather obliquely to then suggest a breach of warranty or a nonconformity of the goods, such assertion in its answer to the motion for summary judgment was ineffective because of a lack of evidence of any antecedent notification to the sellers.

Lynx does not claim that the appellees had any contractual relationship with the United States government or owed it any duty with respect to the goods which were delivered to and accepted by the appellant after having been inspected by the government at the plants of OPI and MEI. Unless payment to OPI and MEI under the contracts was made conditional upon acceptance of the fuzes by the government upon field inspection — and Lynx makes no such assertion — evidence of the rejection of a number of the fuzes as a result of the government's "field inspection" — for whatever reasons they may have been rejected — would not be competent evidence under these facts to defeat the liability of the appellant under the contracts in issue.

Lynx's claim in its affidavit challenging the charge of OPI for material and labor for strapping the shipping boxes under P. O. 1070 similarly does not constitute a dispute as to facts material to the resolution of that issue since nowhere in P. O. 1070, as supplemented, nor in the attachment thereto, or letter of authorization thereunder, is any reference made that the price agreed upon between them for strapping the government furnished wire-bound packing boxes was subject in any way to the "acceptability" of such price to the government.

In *Guerassio v. American Bankers Corp.*, 236 Md. 500, 204 A. 2d 568 (1964), the appellants in support of their pleas and in opposition to the appellees' motion for summary judgment alleged that the items of merchandise delivered

and accepted by them were not those items listed in the equipment lease, however, the appellant's acknowledgment and acceptance of delivery indicated that they "received and accepted delivery of all the equipment described in the equipment lease referred to." The lease contained a paragraph that unless within 48 hours after receipt of the equipment the lessee gave the lessor written notice specifying any defect in, or other valid objection to the equipment it shall be conclusively presumed that the equipment is acknowledged to be in good condition and the lessee has accepted and is satisfied that the equipment constitutes the equipment specified in the lease.

There, our predecessors, speaking through Judge Marbury, stated:

> "Thus, in view of this provision, acknowledgment, and the averments in the plaintiff's supplemental affidavit in support of its motion for summary judgment filed before the hearing in the lower court, which indicated that no notice was ever given at the time of the delivery or as provided in the lease, we find that a variance did not exist that would raise a genuine dispute as to any material fact. *Cox v. Sandler's, Inc.*, 209 Md. 193, 197, 120 A. 2d 674; *Nardo v. Favazza*, 206 Md. 122, 110 A. 2d 676; *Frush v. Brooks, supra.*" 236 Md. at 504, 204 A. 2d at 570.

Although the appellant, Lynx, undertook by its affidavit to raise a dispute as to facts, such facts as then asserted by it, under the provisions of the Uniform Commercial Code, were not material to a resolution of the controversy as a matter of law and the appellees, as movants, were entitled to the entry of summary judgments.

*Judgments affirmed; costs to be paid by the appellant.*