30 F.3d 131
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SIEMS RENTAL & SALES COMPANY, INCORPORATED, Plaintiff-Appellant,
v.
FIGGIE INTERNATIONAL, INCORPORATED, Snorkel-Economy
Division, Defendant-Appellee.
 No. 93-2129.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 14, 1994.
Decided: July 25, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CA-92-1968-HM)
 Lee Baylin, Francomano & Karpook, P.A., Baltimore, Maryland, for Appellant.
 Robert E. Powell, Smith, Somerville & Case, Baltimore, Maryland, for Appellee.
 Thomas J. S. Waxter, III, Smith, Somerville & Case, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Siems Rental & Sales Co., Inc., an equipment leasing company, brought this suit in state court against Figgie International, Inc., the manufacturer of two "cherry-picker" type lifts which Siems purchased from Figgie. The complaint alleged that Siems lost rental income from the lifts when one of the lifts, which had been leased to AAI Corporation, was involved in two accidents causing personal injury. The suit was brought in seven counts alleging breach of contract, negligence, strict liability, breach of express and implied warranties of merchantability and fitness for intended use, and misrepresentation.
 
 
 2
 Figgie removed the case to the district court on the basis of diversity jurisdiction and filed a motion to dismiss, or in the alternative, for summary judgment. The district court granted the motion to dismiss with respect to the negligence and strict liability claims and granted summary judgment with respect to the breach of contract and the warranty claims, finding (1) that no express warranty had been made and (2) that proper notice of a claim for a breach of an implied warranty had not been given as required by section 2-607 of the Maryland Uniform Commercial Code. The court denied Figgie's motion for summary judgment with respect to the misrepresentation claim, but Siems later dismissed this count voluntarily.
 
 
 3
 In an effort to cure the lack of notice problem in connection with the two breach of implied warranty claims, Siems filed a motion for reconsideration based on allegedly newly-discovered evidence and sought leave to amend its complaint in order to plead that notice had been given to Figgie. Siems included with this motion additional evidence which it claimed showed that notice had in fact been given. The district court denied the motion, holding that the proposed amended complaint would not cure the defect. In addition, the court held that even if proper notice had been given by Siems, Siems' continued lease of the lifts after its alleged discovery of a defect constituted a waiver of the implied warranty claims. This appeal followed, and, for the reasons discussed below, we affirm.
 
 
 4
 * In May 1987, Figgie International, Inc., Snorkel-Economy Division, a manufacturer of heavy machinery, sold two UNO-33E manlifts to Siems Rental & Sales Company, a company engaged in the business of leasing heavy equipment. The UNO-33E lifts are self-contained manlifts of the "cherry-picker" variety, their primary purpose being to position and raise workers in a basket over 30 feet in the air through the use of a boom system. Siems paid Figgie slightly more than $22,500 for each of the lifts.
 
 
 5
 In June 1988, Siems leased one of the lifts to AAI Corporation. While it was being operated at AAI a year later by Roy Flaharty, an AAI employee, Flaharty was thrown from the lift and seriously injured. He had been moving the lift down a ramp with the steering wheels in the rear and the drive wheels and counterweight forward, a position known as the "reverse configuration," when he applied the brakes and caused himself to be thrown from the seat. During a field investigation of the accident shortly thereafter, a Figgie representative, Gary Wampler, attempted unsuccessfully to duplicate the incident, driving the lift in both the reverse and forward configurations on the same ramp used by Flaharty. Wampler, together with Siems' president and vice president, who had been observing Wampler's attempt to duplicate the incident, concluded that there was no defect with the lift and that Flaharty's accident had been caused by an "operator error."
 
 
 6
 Less than seven days later, on June 26, 1989, Ronald Tognocchi, AAI's assistant safety director, who was also investigating the Flaharty accident, undertook to operate the same lift in the same configuration as that used by Flaharty at the time of his accident. As Tognocchi proceeded down the ramp in the reverse configuration without controlling the speed of the lift, the vehicle was stopped suddenly, and Tognocchi was thrown forward into the steel control panel and killed. Following this second incident, AAI removed the lift from service.
 
 
 7
 In response to the two accidents, on August 7, 1989, Figgie issued Product Safety Bulletin PS-1, advising dealers that some operators were operating the lifts incorrectly and providing instructions on how to position the turntable when driving with the boom nested. This notice only highlighted what was contained in manuals that had been distributed before the accidents. Siems received the bulletin and promptly passed it along to Industrial Services, the lessee of the second lift which Siems had purchased from Figgie. Figgie also issued new warning decals which Siems promptly installed on both lifts. Siems took no other action and continued to receive rental income from Industrial Services and also attempted to collect rental income from AAI. As of July 11, 1990, Siems had received $58,070 in rental charges for the lift not involved in the accident and $29,879 for the AAI lift.
 
 
 8
 In November 1989, Virginia Tognocchi, the wife of the deceased, filed suit against Siems and Figgie in state court. Siems, who negotiated an indemnification agreement with Figgie, took the position in the litigation that there was nothing wrong with the lifts and that the accidents were caused by operator error. The jury nevertheless rendered a verdict in favor of the plaintiffs against Figgie, but not against Siems. Maryland's Court of Special Appeals affirmed the verdict and the Court of Appeals denied a petition for a writ of certiorari. Figgie Int'l v. Tognocchi, 96 Md.App. 228, cert. denied, 332 Md. 381 (1993). After the verdict in Tognocchi, Siems withdrew the lift from Industrial Services and, to this day, has refused to lease or sell either lift, even though evidence indicated lessees and purchasers throughout the country continued to use similar lifts, apparently without incident. Apparently because of the verdict in Tognocchi, Siems commenced this action against Figgie in June 1992.
 
 II
 
 9
 The Uniform Commercial Code adopted in Maryland requires a buyer to give notice to the seller of a breach of implied warranty before instituting an action:
 
 
 10
 (3) Where a tender has been accepted (a) The buyer must within a reasonable time after he 6350 31 6 discovers or should have discovered any breach notify the seller of breach or be barred from any remedy....
 
 
 11
 Md. Comm. Law.Code Ann. Sec. 2-607(3)(a). In Lynx, Inc. v. Ordnance Products Inc., 273 Md. 1 (1974), the Maryland Court of Appeals held that the notice requirement of Sec. 2-607 is a "prerequisite" for a claim for breach of an implied warranty and that "where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.' " 273 Md. at 16-17.
 
 
 12
 As for the content of the notice, the official comment accompanying Sec. 2-607 states that the notice "need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." Md. Comm. Law.Code Ann. Sec. 2-607, Comment 4. The Maryland Court of Appeals has interpreted this provision to require that the notice "inform the seller that the buyer has revoked, identify the particular goods as to which he has revoked and set forth the nature of the nonconformity ...." Lynx, 273 Md. at 16 (emphasis added).
 
 
 13
 In short, under Maryland law the buyer in a commercial transaction is required to give notice to the seller of the alleged breach of implied warranty prior to instituting an action under that theory, and the notice must inform the seller as to the particular goods involved and set forth the nature of the nonconformity.
 
 
 14
 With these principles at hand, we turn to the facts of this case.
 
 III
 
 15
 After the first accident, on June 19, 1989, representatives of Figgie and Siems both inspected the lift involved in the accident as well as the accident site. Gary Wampler, a Figgie representative, drove the lift up and down the slope without incident, and all parties came to the conclusion that the accident had occurred due to "operator error." When the second accident occurred seven days later, on June 26, 1989, Siems still did not notify the Figgie representatives that it considered the product to be defective. On the contrary, Siems continued to lease the second lift to Industrial Services and also sought to collect rental income due from AAI, even though AAI had, after the second accident, withdrawn the lift from use and maintained it only for the purpose of investigation. Indeed, Siems maintained thereafter and throughout the course of the state litigation over the second accident that no defect existed. Even following the verdict in the Tognocchi case, Siems failed to identify the nature of the lifts' nonconformity.
 
 
 16
 The Uniform Commercial Code requires that if the goods have been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach." Md. Comm. Law.Code Ann. Sec. 2-607(3)(a). The notice must "be such as informs the seller that the transaction is claimed to involve a breach," Md. Comm. Law.Code Ann. Sec. 2-607, Comment 4, and "set forth the nature of the nonconformity," Lynx, 273 Md. at 16.
 
 
 17
 Siems initially took the position in this case that Figgie's knowledge of the two accidents and of the Tognocchi litigation constituted sufficient notice of the defect under Sec. 2-607. However, because Siems took the position throughout the Tognocchi litigation that the lift was not defective, the mere knowledge by Figgie of the two accidents and of the litigation are insufficient to notify Figgie that Siems considered Figgie to be in breach of its implied warranty. The absence of any notice to Figgie that Siems considered Figgie to be in breach amounted to a failure to meet the condition precedent to the right to bring the action, and thus Siems "lost the right of his 'remedy.' " Lynx, 273 Md. at 17.
 
 
 18
 Siems asserted, in its motion for reconsideration in light of new documents under Fed.R.Civ.P.54(b), that it did notify Figgie of the alleged breach in a letter from Siems' trial attorney, Lawrence E. Engel, to Figgie's attorney. The letter, which is dated October 22, 1990, stated:
 
 
 19
 Siems Rental & Sales Company, Inc. also makes demand upon Figgie International, Inc. Snorkel--Economy Division for money damages arising out of the loss of use of the product in question and the loss of use of a twin unit, unit number 2-13490010--Snorkel Uno-33-E, taken out of service based upon the instant litigation.
 
 
 20
 This notice, however, does not meet the Maryland standard of asserting a breach of implied warranty and identifying the nature of any nonconformity. Moreover, Siems does not offer a reason as to why it did not submit this letter to the district court when the district court was considering Figgie's motion for summary judgment. Certainly the letter remained within Siems' control throughout discovery since it was written by Siems' own attorney. As the district court correctly observed, "the dockets of federal courts would come screeching to a halt if every procedural error or tactical misjudgment of lawyers would entitle their clients to a 'second bite at the apple.' " Memorandum Op. (July 26, 1993) at 2, quoting Dowty Communications Inc. v. Novatel Computer Sys. Corp., 817 F.Supp. 581, 596 (D. Md.1992).
 
 
 21
 It might appropriately be concluded that the letter was never intended to convey notice of a defect but only to make a generalized claim for indemnity. This is corroborated by Siems' continued demand for and receipt of rental income from the lifts even after the second accident and during the course of the Tognocchi litigation. As the district court properly held, Siems' continued use of the lift when it would have had actual knowledge of a defect indicated that Siems was no longer relying on Figgie's implied warranty. Erdman v. Johnson Bros. Radio & Television Co., 260 Md. 190, 197 (1970) (holding that purchasers' continued use of a television set after notice of a defect amounted to an abandonment of their reliance on the seller's implied warranty). See also Fred J. Miller, Inc. v. Raymond Metal Products Co., 265 Md. 523, 529 (1972) (holding that a continued use even after knowledge of the existence of defect "must be viewed as an intervening cause so that [buyer] could no longer rely on the warranty, and any resulting damage was proximately caused by its own act."). Thus, we conclude that the district court ruled correctly, when it gave, as an additional reason for its decision, Siems' disregard of its purported knowledge of a defect by continuing to receive rental income from both lifts.
 
 
 22
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 23
 AFFIRMED.