### JACKSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1924.)

No. 4046.

1. **Intoxicating liquors** ⬥246—**Interest of innocent party in automobile used in illegal transportation not subject to forfeiture.**

Under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), on seizure of an automobile while being used in the illegal transportation of liquor by the purchaser under a conditional contract of sale, and on his conviction, his interest in the automobile is subject to forfeiture, but the interest of the seller is not if he made the sale in good faith and had no knowledge that the car was used or was to be used for illegal purposes.

2. **Intoxicating liquors** ⬥251—**Seized automobile should not be ordered sold, unless likely to bring more than established claims against it.**

Where the owner of an automobile seized while being used by conditional purchaser has established a bona fide claim against it, if in the

opinion of the court it will not bring enough at forced sale to satisfy the claim, sale should not be ordered, but the machine restored to the owner; but if the property will probably bring more, it should be ordered sold, but on condition that no sale be made for less than the unpaid purchase price, and if a larger sum is received the owner should be paid his claim in full.

In Error to the District Court of the United States for the District of Arizona; Maurice T. Dooling, Judge.

Criminal prosecution by the United States against J. A. Bostick, with George E. Jackson, doing business as the Southern Arizona Auto Company, intervening. From an order denying intervener's petition, he brings error. Reversed and remanded.

For opinion below, see 289 Fed. 127.

The plaintiff in error, being a retail dealer in the buying and selling of automobiles, at Douglas, Ariz., on the 6th day of April, 1922, entered into a written contract with one Bostick, by which he agreed to sell and Bostick to buy a certain described automobile for an agreed price of $700, $150 of which was paid in cash and the remainder to be paid in monthly installments of stated sums, the last of which to be paid September 6, 1922—each of the deferred payments to bear interest as stated in the agreement. It was expressly agreed that the title to the machine should remain vested in the seller until the whole purchase price of it, with interest as specified, should be fully paid, at which time the title should become vested in the purchaser. It was expressly declared that the purchaser should not, without the written consent of the seller, remove or allow the machine to be removed from the state of Arizona until fully paid for, as specified in the contract, but that the purchaser should be entitled to the possession of the machine within the state of Arizona until default made in the making of any of the payments of principal or interest, or in any of the other terms or conditions of the agreement. The agreement further provided that, in the event the purchaser should fail to make any of the specified payments of principal or interest when due, or should remove or allow to be removed the machine from the state of Arizona without the written consent of the seller, or should make default in any of the terms or conditions of the agreement, the seller should have the right to thereupon immediately take possession of the machine, in which event all payments theretofore made by the purchaser should be forfeited as rental for its use, but that upon full payment of the purchase price, with interest as stated, the seller would execute to the purchaser a bill of sale conveying title to the automobile. Four days after the making of the agreement, Bostick, while unlawfully transporting liquor in the machine, was arrested and the automobile seized.

Upon Bostick's conviction, the seller, by intervention, claimed the machine as owner, and asked the court for an order that it or the proceeds of its sale, should it be sold, be turned over to him, for the reason that he had no knowledge that the machine was used or was to be used in the unlawful transportation of liquor. The court found as a fact that the claimant had no knowledge that the automobile was to be used, or was in fact used, by Bostick in the unlawful transportation of liquor, and denied his petition for the return of the machine, and directed its sale without any right of the petitioner to any of the proceeds thereof. The assignment of error calls in question that action of the trial court.

Joseph Musgrove, of Los Angeles, Cal., and Townsend, Stockton & Drake, of Phœnix, Ariz., for plaintiff in error.

Frederick H. Bernard, U. S. Atty., of Tucson, Ariz.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The statute governing the question is as follows:

"Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, * * * and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being·used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the treasury of the United States as miscellaneous receipts." Section 26, title 2, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm).

The court below was of the opinion:

"That an owner, who while retaining title in himself delivers a car on conditional sale, with power to use it in any way that the buyer may desire, cannot escape a forfeiture if the buyer use it unlawfully, by claiming that such unlawful use was without his knowledge. His remedy [said the court] is not against the government by reclaiming the car, but against the buyer by collecting the remainder of the purchase price. An owner may show 'good cause' if he show that the car was taken and used without his knowledge or consent; but where he turns it over to another for a price, giving absolute control to such other, he is not in a position to show 'good cause' against a forfeiture, if the car be seized while unlawfully used in the transportation of liquor, by asserting that such use was without his knowledge."

If, as the court there says, the owner may show the "good cause" referred to in the statute, by showing that the vehicle was taken and used by the purchaser without his knowledge or consent, we are unable to see why that right is necessarily defeated by the fact that, by the terms of its conditional sale, its purchaser was given the absolute control of it within a certain designated territory, and so long as he complied with all of the terms of the sale. If that be so, no conditional sale of such personal property could be made with any security to the seller except by his paying for a policy of insurance. We agree with Judge Thomas in the case of United States v. Sylvester (D. C.) 273 Fed. 253, that "it is apparent that the Congress intended to penalize only the wrongdoer," and not the innocent party or parties to the transaction. As said by the court in that case:

"When a defendant is arrested for transporting intoxicating liquor, and the vehicle is seized, what is to be done with it depends upon what interest the defendant has in it. If he had no interest—that is, if he had stolen it, or had borrowed it from its real owner, who neither knew nor could be presumed to have knowledge of the illegal purpose for which it was to be used—manifestly the wrongdoer had no interest to forfeit, and it ·logically follows, under the provisions of the act, that the vehicle should be returned to its rightful owner, by order of court. If, on the other hand, the wrongdoer had an interest in the vehicle, his interest should be confiscated and the vehicle ordered sold. What, then, is to become of the interest of the condition-

al vendor or the interest of the mortgagee? Are such persons to lose their interest in the vehicle or the value of their property right? The answer is a negative one, and is found in the provisions of section 26, which guard against such loss, as far as possible."

The "good cause" spoken of in the statute obviously depends, in our opinion, upon the facts and circumstances of the particular case. A good illustration was recently before Judge Bourquin in the case of United States v. Kane (D. C.) 273 Fed. 275, where the facts and circumstances attending the contract of sale and the subsequent use of the car were so suspicious as to satisfy the court that the seller was not entitled to any protection against the absolute forfeiture of the vehicle and its proceeds; the court concluding its opinion (273 Fed. 279) as follows:

The seller's "conduct throughout manifests a degree of indifference, if not of consent, that its property be devoted to illegal uses, that is reprehensible, at least. It may have disclosed its attitude to the vendees then, as it has to the public now. Why not? Business would be stimulated, and the car confiscated; deferred payments would be made by a responsible insurer, avoiding hazard of loss by the default of a stranger association of unknown repute and responsibility. Failure to resume possession of the car for defendant's conversion, offense, and defaults, failure to collect deferred payments, failure to disclose its ownership as aforesaid, all unexplained, and the disingenuity of its petition, which implies but recent knowledge of the offense, savor of condonation and ratification of defendant's offense, of collusion and strategy in his interest and to plaintiff's prejudice, and constitute inequitable conduct. To remit forfeiture of the car seems less consistent with justice than does to enforce it."

In the present case the trial court expressly found as a fact that the seller (plaintiff in error) "had no knowledge that the automobile in question was used or was to be used in the unlawful transportation of liquor."

[2] We think it clear that the interest of the defendant to the condemnation proceeding in the machine in question was liable to forfeiture. How, then, may the rights of the conditional vendor be saved without defeating the policy of the law? Judge Rudkin, in the cases of U. S. v. P. F. Smith and R. V. Tucker, and U. S. v. Dick Carlow,[1] in answering that question, we think very properly said:

"If, in the opinion of the court, the property will not sell for enough at forced sale to satisfy the claim of the vendor, no sale should be ordered and the property should be restored absolutely and unconditionally to the owner. If, on the other hand, in the opinion of the court, the property will bring more than the claim of the vendor, it should be ordered sold, but upon condition that no sale should be made for less than the amount of the unpaid purchase price. If a bid for more than that amount is not forthcoming, the property should be restored to the owner; if a larger amount is bid, the property should be sold, and the owner paid the full amount of his claim out of the purchase price, without deductions of any kind. This procedure will protect the rights of all concerned and impair the rights of none."

The judgment is reversed, and the case remanded to the court below for further proceedings in accordance with the views above expressed.

[1] See post, page 624.