## WEBB *v.* CHEVY CHASE CARS, INC.

[No. 48, September Term, 1970.]

*Decided October 16, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

Submitted on brief by *John S. McInerney* for appellant.

*Patrick W. Hoffman,* with whom was *Joseph M. Powers, Jr.,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

After inspecting it, Robert F. Webb bought a new Chevrolet pickup truck from Chevy Chase Cars, Inc. (Chevy Chase) for some $5,000. He made the down payment of $1,498.40 in the form of his post-dated check and agreed to pay the balance in monthly instalments, signing a condi-

tional sales contract which he knew was to be, as it later was, assigned to General Motors Acceptance Corporation (GMAC). In the course of a week, Webb drove the truck more than 300 miles. Then he abandoned it at Chevy Chase's place of business because he had become irritated with Chevy Chase which would not install free a new clutch in his old truck that was well out of warranty, and dissatisfied with the new truck because it did not have a steel bed or oversize wheels. The check for the down payment was not honored by the bank because Webb had not deposited the funds in his bank account to pay it.

Chevy Chase later took back the truck from GMAC (for what consideration the record does not show) and sued Webb for $1,498.40, the amount of the check. Judge Joseph Mathias entered judgment for Chevy Chase for the sum claimed.

Webb argues here, as he did below, that the trial court erred (1) in not granting him a continuance (to enable him to obtain, for use at the trial, the transcript of a deposition and to take additional depositions), (2) in not affording him the "protection" of §§ 143 and 144 of Art. 83 of the Code, the Retail Installment Sales Act, or (3) of the "protection" of either § 2-601 (Buyer's rights on improper delivery) or § 2-602 (Manner and effect of rightful rejection) of Art. 95B, the Uniform Commercial Code. We find that Judge Mathias did not err.

The record shows that Webb's lawyer took the deposition of a witness on November 6, knowing then that trial was set for December 1. The transcript of the testimony taken ran only eleven pages but Webb's lawyer did not arrange for it to be ready for use at the trial. It is claimed that counsel for Chevy Chase was told on November 6 that additional depositions from its employees would be needed by Webb, yet no notice of the taking of a deposition was filed in the period from November 6 to December 1.

Maryland Rule 526 says that:

"When a case has been assigned a trial date, the trial shall not be postponed or delayed by

reason of incompletion of proceedings under Chapter 400 (Depositions and Discovery) except upon motion by any party and notice to all other parties, for good cause shown."

Judge Mathias did not abuse his discretion in deciding that good cause for continuance had not been shown.

Webb's reliance on the Uniform Commercial Code is misplaced. Judge Mathias found as a fact that the purchase order for the truck did not include or contemplate a steel bed or oversize wheels and that the truck model ordered did not come with either a steel bed or oversize wheels. He further found that Chevy Chase repaired minor defects or inadequacies in the truck brought to their attention by Webb. The evidence affords ample support for these findings of fact and of themselves they make §§ 2-601 and 2-602 of Art. 95B of the Code inapplicable. Judge Mathias found applicable § 2-606, which says that acceptance of goods occurs when the buyer after reasonable chance to inspect signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity. His finding of fact on this point, again entirely permissible under the evidence, was that Webb did inspect the truck and thereafter accepted it and used it in his business.

Section 143 of Art. 83 of the Code, the Retail Installment Sales Act, deals with the resale of repossessed goods and the application of the proceeds of a resale as defined therein, including provisions that any surplus over the unpaid balance due at time of repossession shall be paid the conditional buyer and that the buyer shall be liable for any deficiency "if the contract provides for such deficiency liability * * *."

The next section, § 144, provides that:

"When there is no resale pursuant to § 143, all obligation of the buyer under the agreement, shall be discharged, and the holder may retain the goods as his own property without obligation to account to the buyer."

It is agreed that there was no resale under § 143 and Webb contends that under § 144 his liability to make good the check he gave for the down payment was included in the "obligation of the buyer" that § 144 discharges when the holder "retain[s] the goods as his own property without obligation to account to the buyer." Judge Mathias rejected this contention, rightly we think.

The law on the point, unaffected by statute, seems to be well summarized in 47 Am. Jur. *Sales* § 961, when it says:

> "Whether the general rule which prevents recovery of the purchase price after repossession operates to bar a recovery by a conditional vendor on a note or other obligation given as a down payment depends upon whether the note or other obligation comes under the condition of the contract or was accepted as payment in lieu of cash and is independent of the condition. Thus, where a note is considered by the parties as a payment pro tanto and is not included in the conditional agreement, whether it is the note of the vendee or of a third person, consideration therefor does not fail upon the vendor's repossession of the property, and he may enforce the note. However, where a note represents part of the purchase price, even though given as a down payment, if it is not independent of the conditional sales agreement and the terms of such agreement include the note given as down payment, then a repossession of the property will prevent an enforcement of the note."

For a similar view see 3 Jones, *Chattel Mortgages and Conditional Sales,* Bowers Ed. § 1319, pp. 401-402, and Note 56. In the case note in 39 Yale L. J. 124, 125, on *Jones-Short Motor Co. v. Bolin* (Wash.), 279 Pac. 395 (in which recovery on the down-payment note was denied) it is said that:

> "The general rule, however, is that the seller

may dispose of the article as he wishes and may keep the initial payment and subsequent payments made before the default. *Perkins v. Grobben,* 116 Mich. 172, 74 N. W. 469 (1898) ; *Eilers Music House v. Oriental Co.,* 69 Wash. 618, 125 Pac. 1023 (1912) ."

5 Williston, *Sales,* 3rd Ed. § 736, says at p. 480 :

"But that [repossession] involves a termination of the buyer's obligation to pay the price does not follow. The consideration for the promise to pay was the conditional right given the buyer, and 'when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied, and the promise calls for no performance, there is no failure of consideration' [citing *Bierce v. Hutchins,* 205 U. S. 340, 51 L. Ed. 828, and quoting from *Gutlon v. Marcus,* 165 Mass. 335, 43 N. E. 125] ."

In the same section at pp. 484-485, the author says :

"A few courts have also held that in an action brought to reclaim possession, the seller must either tender the portion of the price which has been paid subject to proper reduction for temporary use, or that a money judgment will be rendered in which an equitable reduction is made from the value of the goods. But there is force in the statement of the court 'that there is little equity and no policy in allowing a buyer under such circumstances to be at pleasure quit of his contract with no other liability than such as the law would have implied had there been no contract at all [quoting from *Rayfield v. Van Meter,* 120 Cal. 416, 52 P. 666].' A seller should be allowed all the means that he has contracted for in order to get the price of the goods, and

most courts do not compel the seller to account for any payment which he has received if he reclaims the goods because of the buyer's default."

Professor Bridgewater Arnold in his article *Conditional Sales of Chattels in Maryland* in 1 Md. L. Rev. 187, 215-216, written some four years before the enactment in Maryland of the Retail Installment Sales Act, referred to *Lincoln v. Quynn,* 68 Md. 299, 306, in which the property of the vendee was put in the hands of a receiver. The conditional vendor asked the equity court to order delivery of the goods to him or, alternatively, to order the receiver to pay him the unpaid balance due. The Court said:

"It was stipulated in the contract of sale that if Hoover made default in any of the credit payments, Lincoln might reclaim and take possession of the goods, and that all payments which had been made up to that time should be forfeited. A Court of Equity will not lend its aid to enforce a forfeiture of this kind. Against persons liable to his claim on the property he could in equity recover an interest in the goods equal to the amount of the unpaid purchase money."

Professor Arnold then made reference to *C. I. T. Corporation v. Powell,* 166 Md. 208, wherein the Court held (1) that the conditional vendor had on default properly followed one of three courses authorized by the contract when it repossessed the goods, cancelled the contract and retained all payments received on account of its purchase price as liquidated damages, and (2) that in following that course it abandoned the rights given by the other two contractually authorized courses. Professor Arnold's conclusion was (p. 217) that:

"From the two cases above quoted, it is possible to infer that in Maryland the seller will be permitted to enforce whatever remedies are stipulated for in the contract [including the right to retain payments on account upon re-

possession], except that if it is necessary for him to assert his claims in Equity the latter Court will not enforce what it may consider to be a forfeiture."

That Professor Arnold's legal crystal ball was working well in 1937 seems assured by *Nuttall v. Baker,* 217 Md. 454, 456-457, decided in 1958. There the Retail Installment Sales Act was held not to apply to the conditional sales contract involved. Judge Prescott (later Chief Judge), finding the majority rule in accord with the authorities cited above, decided for the Court that a holding that a buyer in default could recapture his payments would mean a buyer could at will abandon the purchase and lose nothing, saying: "Neither justice nor reason call for such a result," and that:

"Many States have held that the buyer, having broken his contract, forfeits his payments on the purchase price * * * [even] though there was no provision in the contract calling for a forfeiture * * *. We agree with the majority rule that generally, in the absence of contractual or statutory provisions, a conditional vendee, after a repossession of the property due to his substantial default, has no right to recover payments made by him upon the purchase price."

Curiously, Professor Arnold had doubts as to the wisdom of enacting the Uniform Conditional Sales Act. After discussing the requirements in that Act for a mandatory resale after repossession and doubting the efficacy of such a sale in helping the defaulting buyer, he says (p. 221):

"Perhaps in most cases both the vendor and vendee would prefer that upon default the vendor keep whatever payments he has received, that he retake the chattel, and that both call it quits."

The Courts that have construed statutory provisions as to conditional sales identical with or comparable to the

provisions of § 144 of Art. 83, generally have taken the view that they authorize the seller, upon repossession after default where there is no resale, to keep the repossessed goods as his own and to retain the cash down payment made, or to enforce payment of a written instrument given as a down payment.

These holdings include *Franz v. Hair* (Utah), 289 P. 130; *Norman v. Meeker* (Wash.), 158 P. 78; *West Virginia Mack Sales Co. v. Brown* (W. Va.), 81 S.E.2d 103; *Anderson v. Hiatt* (D. Ct. App. Cal.), 4 Cal. Reporter 858; and *Johnson v. Sanderson* (Mont.), 318 P. 2d 248 (in which the rule was recognized but held not to control on the facts). See also Annotation "Repossession by conditional seller as affecting his right to recover on a note or other obligation given as a down payment," 83 A.L.R. 992. The rationale of the holdings is well set out in the *West Virginia Mack* case, which held at 81 S.E.2d 109 that:

> "The provision of that section [§ 23 of the Uniform Act which corresponds to § 144 of Art. 83 of the Maryland Code] which discharges the buyer from 'all obligation' means all obligation incurred or imposed by the conditional sales agreement and does not apply to a note which is given and accepted as a down payment in lieu of cash and is not included in such agreement,"

where the parties intended it as a cash payment and so referred to it in the contract which secured only the unpaid time balances payable in instalments.

We think this reasoning is sound and applies to the case before us. It is apparent that Chevy Chase was not a holder of the conditional sales contract when the default occurred and could not have repossessed the truck if Webb had not made good the check. *Burgin v. Stewart* (Ala.), 114 So. 182; *Great Western Mfg. Co. v. Missouri Nat. Bank* (Kan. App.), 50 Pac. 941. Repossession could only have been availed of by the holder for failure to pay the money instalments secured by the contract. The

obligation of the buyer referred to in § 144 of Art. 83 ordinarily is his obligation to the holder, and so it is here.

Bogert, *Commentaries on Conditional Sales,* 2A Uniform Laws Ann. § 119 at p. 162, says:

> "It is desirable, for the sake of certainty and repose of titles, to clear the slate, and release both parties from further obligations regarding the goods, the parts of the price already paid, and the balance which was to have been paid."

For a similar statement see the Commissioners' Note to § 23 of the Uniform Conditional Sales Act, 2 Uniform Laws Ann.

A comment in 40 Va.L.Rev. 806, 808, on the *West Virginia Mack* case, *supra* concludes, quite appositely in our view, that:

> "The court in the instant [*West Virginia Mack*] case reaches an equitable result by applying common-law principles to resolve the ambiguity latent in Section 23 of the Uniform Act. When the buyer feels a public resale would establish a surplus over the amount of the down payment, Section 20 of the Act guarantees his right to demand such a sale. In the absence of a proper demand, retention of the down payment is not too much to compensate the vendor for the use and depreciation of the chattel. Furthermore, it is clear that the vendor may retain a cash down payment when the buyer defaults. There seems no substantial reason why he should not have an equal right to a note given in lieu of cash."

Judgment properly was entered for Chevy Chase.

*Judgment affirmed, with costs.*