# IN RE: ROBERT G.

[No. 10 (Adv.), September Term, 1983.]

*Per Curiam Order filed April 4, 1983.*

*Opinion filed June 7, 1983.*

The cause was argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Jillyn K. Schulze, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

| IN RE: ROBERT G. | * | In The |
|---|---|---|
| | * | Court of Appeals |
| | * | of Maryland |
| | * | No. 10 (Adv.) |
| | * | September Term, 1983 |

\* \* \* \* \* \*

## PER CURIAM ORDER

For reasons to be stated in an opinion to be filed later, it is this 4th day of April, 1983

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the judgment of the District Court of Maryland, Montgomery County (Douglas H. Moore, Jr., Judge) be, and it is hereby, affirmed with costs; and it is further

ORDERED that the mandate shall issue forthwith.

/s/ Robert C. Murphy
Chief Judge

We shall here hold that a trial judge did not abuse his discretion when he determined that "good cause" had been shown for divulging juvenile court records.

This case arises under Maryland Code (1974, 1980 Repl. Vol., 1982 Cum. Supp.) § 3-828 (b), Courts and Judicial Proceedings Article, which provides, "A juvenile court record pertaining to a child is confidential and its contents may not be divulged, by subpoena or otherwise, except by order of the court upon good cause shown." The term "court" is defined in § 3-801 (i) as to Montgomery County, from whence comes this case, as meaning "the District Court sitting as the juvenile court."

Robert G. was charged in Montgomery County with first degree murder, first degree sex offense and related offenses arising out of a single incident. The State sought a court order authorizing it to review Robert G's juvenile court record prior to making its decision as to whether to ask the death penalty for the offense. Code (1957, 1982 Repl. Vol.) Art. 27, § 412 (b) requires the State, if it intends to seek the death sentence for first degree murder, to notify "the person in writing at least 30 days prior to trial" of such fact and to advise that person "of each aggravating circumstance upon which it intend[s] to rely . . . ." Aggravating circumstances are as set forth in Art. 27, § 413 (d).

In *Murphy v. Yates,* 276 Md. 475, 495, 348 A.2d 837 (1975), Judge Singley referred for the Court to the State's attorney's "most awesome discretionary power: to determine whether or not to prosecute." Obviously, whether or not to seek the death penalty is an even more awesome power. It was for the purpose of determining whether the death penalty should be sought that the State's Attorney for Montgomery County asked that the juvenile court record in question be disclosed to him. The trial judge said in determining to make the material available to the State:

"There is a great deal of material in [Robert G's] file. This member of the court is personally familiar with [Robert G.] and probably most of his prior record. . . . [T]he court is generally aware that there is

a rather extensive juvenile court record as well, in the legal sense, as well as a great deal of evaluative materials, probation reports, (unclear word) investigations and so forth, that make up [Robert G's] file. That I'm sure are and have been of assistance to Defense counsel and would be of some assistance to the State. The court is going to order the release of the records to the State's Attorney. I feel that this should be done for two reasons. First of all the — the being a major offense I don't want this to be considered a precedent for any serious charge, I'll have to determine what constitutes a sufficiently serious charge in future cases but clearly the charges here are of major proportions. And I feel that the — it is in the interest of the community, in the interest of the public to give the State the same advantage in determining matters that are in the file and the weight to be accorded them and the use to be made of them, the same advantage as has already been given to Defense counsel in this case. Limiting it to the facts of this case of course. The State has some decisions to make. And there of course is the proceeding before the State's Attorney wherein the determination be made whether to seek the death penalty, and I feel the State should in that circumstance alone be, be able to have the same material available to it in making its determination and responding to Defense counsel as would the Defense counsel in presenting matters in mitigation. I don't mean to sound naive, the State has alluded to it, that there is some of this material in here that may well be beneficial to [Robert G.] and make the difference between what the State decides to do and what it decides not to do. Clearly in my view some of this material may be beneficial to him in the sentencing aspect if he is convicted of any or all of these offenses. But of course that would be as I read it automatically accessible to parole and probation in any event. That is not really part of my deter-

mination. But I do find that good cause has been shown and the need for this material to be available to the State."

Robert G. immediately appealed to the Court of Special Appeals. We granted his petition for a writ of certiorari prior to argument in that court. The cause was argued before us on April 4, 1983. At that time we issued a per curiam order affirming the judgment of the District Court of Maryland, Montgomery County, for reasons to be stated in an opinion to be filed later and directed that the mandate should issue forthwith. We now state our reasons.

Robert G. points out that one of the purposes of the juvenile subtitle is, as set forth in § 3-802 (a) (2), "[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior . . . ." He also says that § 3-802 (b) states that the "subtitle shall be liberally construed to effectuate these purposes." All parties concede that the only exception to the required confidentiality of juvenile records which could be applicable to this proceeding would be if there has been "good cause shown."

*Black's Law Dictionary* 623 (5th ed. 1979), defines good cause as:

> "Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase 'good cause' depends upon circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed. . . . 'Good cause' is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures involved in type of case presented." (Citations omitted.)

There are no prior Maryland cases arising under this statute. However, this Court has considered the term "good cause" in a variety of contexts. Our view of "good cause" has been as stated by *Black.* Without exception we have applied

an abuse of discretion standard in reviewing action by a trial judge.

One of our most recent cases is *Taliaferro v. State,* 295 Md. 376, 456 A.2d 29, *cert. denied,*     U.S.    , 103 S.Ct. 2114 (1983). At issue there was the exclusion of a defendant's only alibi witness whose identity had not been disclosed prior to trial as required by Maryland Rule 741. Rule 741 g provides that "[u]pon motion and for good cause shown, the court may order that specified disclosures be restricted." The rule also allows the trial court to "strike the testimony to which the undisclosed matter relates . . . [or] prohibit the party from introducing in evidence the matter not disclosed. . . ." We held that "good cause" depends upon facts and circumstances.

In *Mathias v. State,* 284 Md. 22, 394 A.2d 292 (1978), *cert. denied,* 441 U.S. 906 (1979), we addressed the issue of an attempt on the part of an accused on the morning of trial to change his election of a court trial to that of a jury trial. What was then Rule 741 provided that a trial court might, "in its discretion and for good cause shown, at any time prior to the trial permit the accused to change his election." We said there:

> "Precisely what is meant by an abuse of discretion seems not to have been articulated by this Court. However, some bench marks are to be found. For example, in *Washington, B. & A. R. R. v. Kimmey,* 141 Md. 243, 250, 118 A. 648 (1922), relative to the discretion to be exercised in considering a motion for a new trial, Judge Urner said for our predecessors, 'A discretion could not be characterized as sound which wholly disregarded evidence by which its exercise should have been aided.' In *Horton v. Horton,* 157 Md. 127, 133, 145 A. 355 (1929), concerning the discretion of orphans' courts in the case of intestacy to grant letters to a child or to the husband or widow, as the case might be, the Court said, '[I]t means that the court shall actually

exercise a discretion, and that it shall make its choice after considering the relative merits and fitness of the applicants, and their respective claims to consideration, and not that it may act without regard to such consideration, solely at its pleasure or caprice.' In *Lee v. State,* 161 Md. 430, 157 A. 723 (1931), Chief Judge Bond said for the Court:

> 'The meaning of discretionary power in a trial court, and the rules governing review of discretionary orders on appeal, have often been stated in vague, loose terms which furnish no exact guidance; but for the purposes of this case it seems to us sufficient to observe only that the judgment and discretion must be exercised in solving the exact problem of the law, upon all the considerations which properly enter into the problem, and form it. For instance, the discretion being for the solution of the problem arising from the circumstances of each case as it is presented, it has been held that the court could not dispose of all cases alike by a previous general rule. *Union Bank v. Ridgely,* 1 H. & G. 324, 407 [(1827)].' *Id.* at 441."

284 Md. at 26-27.

In *Stanford v. District Title Insur.,* 260 Md. 550, 273 A.2d 190 (1971), appellee requested and was granted a dismissal for lack of prosecution pursuant to Rule 530. Plaintiff appealed. Rule 530 c at that time provided that the trial court "for good cause shown" might suspend the operation of the rule upon such terms as the court may prescribe. In the discussion for the Court, Judge Digges said:

> "The decision to permit the redemption of a cause lost through delay involves subtle judgment, requiring the trial judge to balance the individual litigant's right to ultimately have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of

conflicts while they still remain current. The primary focus of his inquiry should be on diligence and whether there has been a sufficient amount of it during an eighteen month period of inaction for the court to affirmatively conclude that the case should not be automatically dismissed. That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse. *Tydon v. Spong,* [237 Md. 107,] 110 [, 205 A.2d 220 (1964)]." 260 Md. at 555.

The Court relied upon *Stanford* in *Langrall, Muir & Nopp'r v. Gladding,* 282 Md. 397, 384 A.2d 737 (1978), a case also dealing with automatic dismissal under Rule 530. Judge Cole said for the Court there:

"We placed the responsibility on the trial judge to weigh and balance the rights, interests, and reasons of the parties in light of the public demand for prompt resolution of litigation when inactivity characterized a cause of action. We suggested that . the trial judge, on the scene, will have a perception and understanding of the legal environment in which the case is temporarily mired. Therefore, he was vested with the discretion to be exercised consistent with the spirit of the law while subserving the ends of justice and fairness to the parties." *Id.* 400-01.

*Webb v. Chevy Chase Cars, Inc.,* 259 Md. 284, 269 A.2d 810 (1970), concerned Rule 526 which provides a "trial shall not be postponed or delayed by reason of incompletion of proceedings under Chapter 400 (Depositions and Discovery) except upon motion by any party and notice to all other parties, for good cause shown." Webb's lawyer took a deposition on November 6 knowing that the trial was set for December 1. The transcript of the deposition ran only eleven pages but the attorney did not provide for it to be ready for use at the trial. Webb argued on appeal that the trial court

should have granted him a continuance. Chief Judge Hammond there said for the Court, "Judge Mathias did not abuse his discretion in deciding that good cause for continuance had not been shown." 259 Md. at 287.

Rule 420 provides that a trial court "may, upon motion by any party and notice to all other parties, for good cause shown, order such party to submit to a mental or physical or blood examination," etc., whenever "the mental or physical condition or the blood relationship of a party or of an agent or a person in the custody or under the legal control of a party [ ] is material to any matter involved in any action." *Hutzell v. Boyer,* 252 Md. 227, 249 A.2d 449 (1969), among other things, concerned an attempt to obtain a second physical examination of the plaintiff. Judge Finan said for the Court that we found "no abuse of the court's discretion in refusing to order the second examination." *Id.* at 236.

In *Kay Const. Co. v. County Council,* 227 Md. 479, 177 A.2d 694 (1962), the issue was whether "good cause" existed sufficient to allow the District Council to reconsider a zoning resolution. Judge Sybert said for the Court there:

> "The Zoning Ordinance does not define what conditions must be met to establish 'good cause shown'. While it may not be possible to state an all-embracing definition of that phrase, it is possible to ascertain its general meaning by an examination of some of the cases where the problem of applying it has arisen. What will measure up to a showing of 'good cause' in a particular case will depend upon the circumstances of that case." 227 Md. at 484-85.

At another point in the opinion the Court said:

> "The Ordinance, by requiring that 'good cause' be shown as a necessary condition to the granting by the Council of a petition for reconsideration, has in effect grafted upon that agency a limitation which exists in regard to quasi-judicial bodies even in the absence of statute. It permits the Council to grant

a petition for reconsideration only where there appears to be a substantial reason for doing so, as defined in the cases cited." *Id.* at 486.

Cases from other jurisdictions are consistent with what we have quoted from Maryland. *See, e.g., Jager v. State,* 537 P.2d 1100 (Alaska 1975) (Regulation promulgated by the Public Utilities Commission provided that a formal investigation would not be instituted on complaint "except for good cause shown to the commission's satisfaction by the complainant."); *State v. Churchill,* 82 Ariz. 375, 380, 313 P.2d 753 (1957) (Statute provided for dismissal of prosecutions if a defendant was not brought to trial within sixty days "unless good cause to the contrary is shown by affidavit . . . ." The court said, *"Good cause* means substantial reason, that is, one that affords a legal excuse." (Emphasis in original.)); *Sanchez v. Unemployment Ins. Appeals Bd.,* 20 Cal. 3d 55, 70, 569 P.2d 740, 141 Cal. Rptr. 146 (1977) (One issue was whether the claimant refused proffered employment for "good cause." The court said, quoting *Syrek v. California Unemployment Appeals Insurance Board,* 54 Cal. 2d 519, 529, 354 P.2d 625, 7 Cal. Rptr. 97 (1960), " '[T]he term "good cause" as used in the statute means an adequate cause, a cause that comports with the purposes of the Unemployment Insurance Code and with other laws.' "); *Tucker v. People,* 136 Colo. 581, 586, 319 P.2d 983 (1957) (The case involved prosecution for failure to support minor children. At issue was whether this failure was, in the words of the statute, "owing to physical incapacity or other good cause." The court said, " 'Good cause' is defined as a substantial or legal cause as distinguished from an assumed or imaginary pretense [, citing cases].").; *State v. Estencion,* 63 Hawaii 264, 267, 625 P.2d 1040 (1981) (The issue before the court was whether the trial court abused its discretion in finding that there was an absence of "good cause" under a Hawaii rule pertaining to trial delay. The court said, "Under Rule 48(c)(8), a general 'good cause' ground is provided to take care of *unanticipated circumstances . . . .*" (Emphasis added by the Hawaii court.) The court went on to say, "As a general rule, 'good cause' means a substantial reason; one that

affords a legal excuse [, citing cases].”); *Fong v. Jerome Sch. Dist. No. 261,* 101 Idaho 219, 222, 611 P.2d 1004 (1979) (At issue was whether Mrs. Fong quit her employment “voluntarily” and “without good cause.” The court said:

> “This Court has set forth the proper nature and scope of good cause in *Burroughs v. Employment Security Agency,* 86 Idaho 412, 387 P.2d 473 (1963), as follows:
>
>> ‘In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive; . . .’ ”);

*State v. McTague,* 173 Minn. 153, 154, 216 N.W. 787 (1927) (At issue was whether good cause to the contrary had been shown for a delay in a “prompt trial.” The court said, “ ‘Good cause’ means a substantial reason — one that affords a legal excuse.”); *State v. Rozzell,* 157 Mont. 443, 450, 486 P.2d 877 (1971) (The question was whether the trial court erred in permitting the State to amend its information by adding certain names to the list of witnesses. In holding that there was no error, the court said:

> “ ‘Good cause’ has been defined as ‘substantial reason,’ one that affords a legal excuse. Pines v. District Court in and for Woodbury County, 233 Iowa 1284, 10 N.W.2d 574. It is a legally sufficient ground or reason. Jackson v. United States, 9 Cir., 295 F. 620. It can be presumed that the trial judge, for absence of any other showing, exercised his discretionary power in granting the order adding the witnesses, and was well aware of the statutory requirements.”);

*Chamberlin v. Chamberlin,* 206 Neb. 808, 813-14, 295 N.W.2d 391 (1980) (A Nebraska statute provided that "orders for alimony m[ight] be modified or revoked for good cause shown . . . ." The court quoted from the definition appearing in *Black's Law Dictionary* which we have quoted earlier in this opinion.); *State In Interest of B. C. L.,* 82 N.J. 362, 379, 413 A.2d 335 (1980) (A New Jersey statute provided that information as to the identity of a juvenile fourteen years of age or older adjudicated a delinquent might be disclosed to the public where certain offenses were involved unless upon application at the time of disposition "and for good cause shown" or upon its own motion the court ordered the information withheld. The court said that the exercise of the juvenile court's discretion under that statute "should be treated similarly to a sentencing judge's exercise of discretion."); *Bradey v. Children's Bureau of South Carolina,* 275 S.C. 622, 274 S.E.2d 418, 421 (1981) (Brady sought to compel disclosure of the identity of his natural parents. The statute provided that files pertaining to adoption proceedings should be confidential and withheld from inspection "except upon order of court for good cause shown." The trial court found good cause. The Supreme Court of South Carolina reversed. In the process it said, "[T]he statute allows a party to come forward and make a showing of good cause. By 'good cause' we believe the party must demonstrate a *compelling need* for the identifying information . . . . What constitutes a compelling need for identifying information depends upon the circumstances of each case." (Emphasis in original.)); *Matter of Unemployment Appeal of Fickbohm,* 323 N.W.2d 133, 135 (S.D. 1982) (At issue was whether an unemployed individual had "failed, without good cause . . . to apply for available suitable work when so directed by the department . . . ." The court noted, "There is no statute defining good cause for failure to apply for a job . . . ." It quoted with approval from *Trexler v. Com., Unemployment Comp. Bd.,* 27 Pa. Commw. 180, 365 A.2d 1341, 1344 (1976), where that court said:

"We must also remember that 'good cause', being undefined in the Act, is a flexible term and therefore not amenable to general rules or rigid formulas. Instead, its meaning must be deduced from the facts of each case in a manner that is consistent with the Act's fundamental purpose, which is to insure that employes who become unemployed through no fault of their own are provided with some semblance of economic security. Viewed in this setting 'good cause' may cover reasons which are extraneous to the employment and strictly personal to the claimant, provided, however, that such personal reasons involve real and substantial circumstances which compel the decision to refuse suitable work and rest on 'good faith.' '[G]ood faith, as used in this context, includes positive conduct on the part of the claimant which is consistent with the genuine desire to work and be self-supporting.' ");

*Rakes v. Fulcher,* 210 Va. 542, 546, 547, 172 S.E.2d 751 (1970) (The case deals with the production of documents under Virginia discovery rules. The rule provides that upon "motion of any party showing good cause therefor" certain items might be discovered. The court said, "The granting or denying of a request under Rule 34 is a matter within the trial court's discretion and will be reversed only if the action taken was improvident and affected substantial rights." It also observed, "[T]here must be a showing of some special circumstances in addition to relevancy."), and *Sage Club, Inc. v. Employ. Security Com'n,* 601 P.2d 1306, 1310 (Wyo. 1979) (At issue was whether an employee had left employment for "good cause" and was therefore entitled to unemployment benefits. In determining that good cause had not been shown the court said, "It is a question of statutory construction and a question of law what the statutory language 'good cause' means." It quoted from 81 C.J.S. *Social Security and Public Welfare* § 226 a, 450 (1977), "The terms 'good cause' and 'personal reasons' connote, as minimum requirements, real circumstances, substantial reasons,

objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action . . . .").

Of particular significance is *State v. Allen,* 70 N.J. 474, 361 A.2d 5 (1976). There a rule said that juvenile records generally were confidential. The rule provided, however, ."The court may, in its discretion, in the best interest of a juvenile or adult or for other good cause, permit inspection of any procedural or social record," etc., with an exception not pertinent here. The court held that good cause existed to allow a prosecutor to examine the juvenile records of a defendant's crucial alibi witness. The court noted "that the Prosecutor's ultimate purpose is to resolve the issue of a juvenile's competency as a key alibi witness." 70 N.J. at 485. The court held that good cause was shown.

We believe that when a prosecutor is faced with the awesome duty of deciding whether or not to seek the death penalty he is entitled to all pertinent information in public records which might have a bearing on the exercise of his discretion. The juvenile record of the accused certainly could have a direct bearing upon the exercise of that discretion. Hence, we find no error on the part of the trial judge.