Having considered the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

IT IS on this 6th day of December, 1993 hereby ORDERED that the motion to dismiss Count II is granted.

M.P., et al., Plaintiffs,

v.

Marie SCHWARTZ, et al., Defendants.

Civ. A. No. PJM 94–CV–54.

United States District Court,
D. Maryland.

May 19, 1994.

As Corrected June 10, 1994.

---

9. The risk of arbitrary enforcement created by Section 505 is reflected in the government's charge against Ayala. Section 505 provides in part that "any person who abuses a child" is guilty of child abuse. "Abuse" is defined in Section 503(a) as "sexual conduct with a child."

Rather than charging Ayala under the portion of Section 505 which *expressly* and *clearly* forbids sexual conduct with a child, the government inexplicably charged him under the portion which *implicitly* and *vaguely* forbids such conduct. Such arbitrary charging demonstrates the need for more definite standards.

10. The court expresses no opinion as to the constitutionality of the remaining portions of Section 505, or other sections of the Child Protection Act of 1992, Title 14, § 501, *et seq.*

Craig L. Silver, Gaithersburg, MD, John B. Walsh, Jr., Rockville, MD, for plaintiffs.

Brian F. Lee, Rockville, MD, for interested person.

Millicent Edwards Gordon, Shelly E. Mintz, Asst. Attys. Gen., Baltimore, MD, for defendants.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

MESSITTE, District Judge.

## I.  INTRODUCTION

The Complaint in this case was accompanied by Plaintiffs' Motion to File (the) Com-

plaint and Attachments Under Seal. The United States Court of Appeals for the Fourth Circuit, in *Stone v. University of Maryland Medical System Corporation,* 855 F.2d 178 (4th Cir.1988) and *In Re Knight Publishing Company,* 743 F.2d 231 (4th Cir. 1984), has directed that the District Court follow certain procedures in such event:

■ 1) When a request is made to seal a court record, the Court must give the public notice of the request and a reasonable opportunity to challenge it. *Stone,* 855 F.2d at 181.

■ 2) Pending receipt of responses from interested parties, the Court may order that the record be temporarily sealed. *In Re Knight Publishing Company,* 743 F.2d at 235, n. 1.

■ 3) The Court must then give due consideration to any request by an interested party that the motion to seal be denied or modified or that the temporary order of sealing be vacated. *Stone,* 855 F.2d at 181.

■ 4) As a threshold matter, the Court must determine whether the basis of the claim to access to the sealed document is the common law or the First Amendment to the U.S. Constitution. *Stone,* 855 F.2d at 180. If the basis is the common law, the Court must weigh the common law presumption in favor of access against any competing interests in confidentiality. If, on the other hand, the First Amendment is the basis of the claim, the Court may deny access only on the basis of a compelling governmental interest and only if the denial is narrowly tailored to serve that interest. *Id.*

■ 5) The Court must thereafter make specific findings of fact and state its reasons for the entry of any order relative to the sealing or unsealing. *Id.* In particular, the Court must state its reasons for rejecting any measures less drastic than sealing. *Stone,* 855 F.2d at 181.

6) Pursuant to the Fourth Circuit's directives, the Court enters the following findings of fact and conclusions of law.

## II. *FINDINGS OF FACT*

7) On January 7, 1994, Plaintiffs sued Defendants, two employees of the Montgomery County Department of Social Services (MCDSS), under 42 U.S.C. § 1983, alleging that Defendants, under color of State law, deprived Plaintiffs of rights secured to them under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Their Complaint also includes counts arising under the Declaration of Rights of the Maryland Constitution and its gist is that the minor Plaintiff sustained severe physical and emotional abuse while in the legal custody of MCDSS.

8) Contemporaneously with the filing of the Complaint, Plaintiffs filed a Motion to File Complaint and Attachments Under Seal. The Motion refers to various provisions of Maryland law dealing with the confidentiality of certain proceedings, including statutes which make it unlawful, except pursuant to order of court, for persons to divulge information concerning any recipient of social or child welfare services (*Md.Code* 1957, 1985 Repl.Vol., 1993 Cum.Supp., Article 88A, Section 6) or any court records pertaining to a child (*Md.Code* 1974, 1989 Repl.Vol., 1993 Cum.Supp., § 3–828(b)(1)).

9) By Order dated January 25, 1994, the Court directed that the Complaint and attachments be temporarily sealed for so long as Plaintiffs' Motion to File Complaint and Attachments Under Seal might be under consideration, but provided that the Motion itself should not be under seal and granted leave to any interested party to file, within 45 days from the date of the Order, a motion to vacate the order of temporary sealing.

10) On March 11, 1994, Elizabeth Ortega–Ohlmeyer filed a Motion to Vacate the Court's Order. Ms. Ortega–Ohlmeyer publishes a bi-weekly bilingual newspaper entitled "El Montgomery," which serves the Hispanic Community of Montgomery County.

11) Ms. Ortega–Ohlmeyer states that, upon information and belief, the instant proceeding involves an allegation of child abuse against two employees of the MCDSS, and that the matter is "of important public interest in that the public should be made aware of, and be allowed to decide if any problems

regarding the health, safety and welfare of minors exist with the Montgomery County Department of Social Services, and if so, what corrective measures, if any, should be taken." Ms. Ortega–Ohlmeyer contends that her right of access to information in this case outweighs any policy of confidentiality embodied in the referenced statutes. She therefore asks that the Court vacate its Order of January 25, 1994, or that it employ other measures less drastic than sealing that would preserve public access to at least a portion of the record.

12) Counsel for Plaintiffs and Defendants have filed written responses to the Motion to Vacate.

13) Counsel for all parties agree that the Motion to Vacate may be decided on the pleadings without the need for further hearing.

## III. CONCLUSIONS OF LAW

14) Ms. Ortega–Ohlmeyer's bases her right of access on both the common law and the First Amendment.

■ 15) The Court will apply the standard most favorable to Ms. Ortega–Ohlmeyer, i.e. the First Amendment standard. The Court may thus deny her access to the Court record only if it finds the existence of a compelling governmental interest and only if denial is narrowly tailored to serve that interest.

16) Section 6 of Article 88A of the Maryland Code is entitled "Misuse of public assistance lists and records." Subparagraph (a) of the section provides in pertinent part that "(e)xcept in accordance with a court order," and other non-relevant exceptions,

> it shall be unlawful for any person or persons to divulge or make known in any manner any information concerning any recipient of social services, [or] child welfare services ... directly or indirectly derived from the records, papers, files, investigations or communications of the State, county or city, or subdivisions or agencies

thereof, or acquired in the course of the performance of official duties.[1]

17) Section 3–828(b)(1) of the Courts and Judicial Proceedings Article of the Maryland Code provides that, except upon order of court for good cause shown, a court record pertaining to a child is confidential and its contents may not be divulged.[2]

18) Plaintiffs argue that these statutes reflect Maryland's strong public policy favoring confidentiality of court proceedings involving children, as well as the right of privacy of those receiving the benefit of social services and that these policies outweigh any presumption in favor of public access to court records and proceedings. Defendants agree. Ms. Ortega–Ohlmeyer argues that her right of access outweighs the public policies expressed in those statutes, because public awareness of problems within the MCDSS may lead to the proper assessment of blame and the implementation of corrective measures.

19) "The Supreme Court has suggested that factors to be weighed in the balancing test include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In Re Knight Publishing Company, 743 F.2d at 235, citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

20) Both Plaintiffs and Defendants offer a compromise which they believe will protect the interest of the minor involved in this case, achieve the confidentiality objectives of the statutes, and at the same time accommodate the interest of the public and the press. They suggest that the Court make available to Ms. Ortega–Ohlmeyer a redacted copy of the Complaint, one in which the names of all Plaintiffs are removed and initials substitut-

---

1. Although not cited by Plaintiffs, Subparagraph (b)(1) of Section 6 provides that, subject to certain exceptions, all records and reports concerning child abuse or neglect are confidential and

may not generally be disclosed without court order. Md.Code, Art. 88A, § 6(b)(1).

2. See also Maryland Rule of Procedure 921.

ed in their stead. They further suggest that all attachments remain under seal for the present time, pending further court order.

21) Ms. Ortega–Ohlmeyer has not objected to the solution proposed by Plaintiffs and Defendants.

22) The Court notes that the Complaint in this case consists of 49 pages of detailed factual allegations. The attachments to the Complaint consist of a number of proceedings before the Juvenile Court for Montgomery County, as well as status and progress reports of the MCDSS regarding the minor Plaintiff and her family. Substantial portions of the reports are first-person observations, while other portions are hearsay in nature.

23) The Court recognizes that "the public's right of access to judicial records and documents may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182. Nonetheless, special solicitude for the privacy of a minor is a pervasive feature of American law. Confidentiality has long been a distinguishing feature of juvenile court records and proceedings. *See e.g. In Re Robert G*, 296 Md. 175, 461 A.2d 1 (1983).[3] Whereas exposure of juvenile proceedings might encourage an offender to commit further acts of delinquency, lose employment opportunities, or otherwise suffer unnecessarily for youthful transgressions, Cf. *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), confidentiality of the proceedings is believed to promote rehabilitative goals. *Id.* Thus the Supreme Court has acknowledged on multiple occasions that a State acts properly in restricting public access to such information. *See Id.; Oklahoma Publishing Company v. District Court in and for Oklahoma County*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (noting that the trial judge could have availed himself of the opportunity, provided by state statute, to close a juvenile hearing to the public, including the press, which later broadcast defendant's name); Cf. *Florida Star v. B.J.F.*, 491 U.S. 524, 534, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989): ("The government may classify

certain information [and] establish and enforce procedures ensuring its redacted release . . .")

In addition, confidentiality has been deemed of particular importance in the context of records concerning child abuse and neglect. In fact, the Federal Child Abuse Prevention and Treatment Act requires that a State, in order to qualify for a federal grant, must, among other things, "provide for methods to preserve the confidentiality of all records in order to protect the rights of the child, his parents or guardians." 42 U.S.C. § 5106a(b)(4); *see also* 45 C.F.R. § 1340.-14(i)(1). Maryland has conformed to this mandate, not only to garner the benefits of the federal grant, but "in a larger, societal sense, to provide for confidentiality." *State v. Runge*, 317 Md. 613, 566 A.2d 88 (1989). The present proceeding, while civil in nature, is nonetheless inextricably bound up with allegations of child abuse practiced against the child, not, it should be said, by the Defendants but by someone Defendants were supposed to be monitoring. Disclosure of the child's name under these circumstances would be tantamount to naming the child victim in the criminal child abuse proceeding itself. Moreover, naming the parent or parents of the child would still inevitably lead to identification of the child.

■ 24) There is, in the Court's view, no need for this to occur. While it is in no sense the case that Ms. Ortega–Ohlmeyer seeks information for an improper purpose or to promote public scandal or gain an unfair business advantage, it is equally clear that any interest she and through her the public might have in learning about potential problems in the Montgomery County Department of Social Services can be satisfied by perusal of the Complaint without the name of the particular child and her family included.

■ 25) Similarly there is no need, at least at present, to make the attachments to the Complaint available. These, the Court finds, are already largely summarized in the Complaint itself and, while they obviously

---

**3.** According to a 1980 report, 42 of 51 jurisdictions in the United States prohibit the public from inspecting juvenile records. *See Reports of* the National Juvenile Justice Assessment Centers: *Legislation, Jurisdiction, Program Interventions, and Confidentiality of Juvenile Records,* 234–237.

consist of more detail, they also include enough hearsay to make their reliability less than firm at this stage. In this regard the Court notes that, under the *Nixon* case, it may properly entertain a concern over information that is potentially impertinent or scandalous to one or more persons. That concern is precisely what gives the Court pause as of now. Whether and to what extent the attachments may hereafter become suitable for unsealing are issues that may always be revisited as the case proceeds.

26) Nothing in the present Order is intended to suggest that the Court proceedings themselves will be closed to the public, an issue not before the Court at this time.

27) In summary, the Court notes that Ms. Ortega–Ohlmeyer has not objected to the offer of compromise that both Plaintiffs and Defendants have made. Moreover, the full 49 pages of the Complaint will be made available to Ms. Ortega–Ohlmeyer, with only the names of the Plaintiffs redacted, and, at least for the time being, without the attached exhibits. The matter of further unsealing of the record will remain open for subsequent consideration. The Court finds that there is a compelling governmental concern in preserving the confidentiality of identity of the minor Plaintiff and her family and that this decision is sufficiently narrowly tailored to preserve the confidentiality concerns of the parties, while accommodating the conflicting interest in access advanced by Ms. Ortega–Ohlmeyer. *See In Re Knight Publishing Company,* 743 F.2d at 236.

28) A separate Order will be entered implementing this decision.

### ORDER

Upon the Petition of Elizabeth Ortega–Ohlmeyer d/b/a "El Montgomery," to Vacate the Court's Order of Temporary Sealing dated January 25, 1994, and the responses of Plaintiffs and Defendants thereto, counsel for all parties having indicated that no further hearing is necessary on the Motion, it is this 19th day of May, 1994

ORDERED that said Motion is hereby GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that the Motion is GRANTED to the extent that the Court VACATES its Order of January 25, 1994, in the following respects:

1) Plaintiffs are authorized to deliver to Ms. Ortega–Ohlmeyer a redacted Complaint identical to that which appears as Attachment A to Plaintiffs' Reply to Ms. Ortega–Olhmeyer's Motion to Vacate;

2) The original Complaint and attachments and other court pleadings shall remain under seal pending further Order of this Court;

3) Any interested party is hereby granted leave to file a motion requesting the Court for further relief regarding the contents of the Complaint and the attachments thereto and other court pleadings;

4) This Order is entered pursuant to Section 6(a) of Article 88A of the *Maryland Code* and Section 3–828(b)(1) of the Courts and Judicial Proceedings Article of the *Maryland Code;*

5) Except as inconsistent herewith, the Motion to Vacate is DENIED and the Court's Order of January 25, 1994, is hereby REAFFIRMED;

6) This Order and the Findings of Fact and Conclusions of Law on which it is based shall not themselves be filed under seal.