979 A.2d 698

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Lester A.D. ADAMS.

**Misc. Docket No. AG 65, Sept. Term, 2006.**

Court of Appeals of Maryland.

Sept. 9, 2009.

Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland, for Petitioner.

Charles E. Iliff, Jr. (Iliff & Meredith, P.C.), Pasadena, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE (Retired, specially assigned), and IRMA S. RAKER (Retired, specially assigned), JJ.

BELL, C.J.

Lester A.D. Adams, the respondent, was reinstated [1] to the practice of law in this State by Order of this Court, a majority concurring, dated April 11, 2007. *Attorney Grievance*

---

1. By Order of this Court, dated August 6, 1998, Lester A.D. Adams, was suspended from the practice of law indefinitely, but with the right to apply for reinstatement after one year. The conduct underlying the suspension related to the management of his attorney trust account and consisted of his violation of sections (a) and (b) of Rule 1.15 of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, and Maryland Rule 16–607(a). *See Attorney Grievance Comm'n v. Adams*, 404 Md. 1, 2, 944 A.2d 1115 (2008).

*Comm'n v. Adams,* 404 Md. 1, 944 A.2d 1115 (2008). His·reinstatement was immediately challenged. Just over a month after he was reinstated, Jonathan A. Azrael, counsel for Christopher A. Brooks, a party to litigation involving the respondent, filed a *Motion To Strike Order Granting Reinstatement. Id.* at 3–4, 944 A.2d at 1116. In addition to seeking to vacate reinstatement, he sought further proceedings under Maryland Rule 16–781(i).[2] Conceding that the Court was aware of the litigation, which Bar Counsel referenced[3] in responding to the respondent's petition for reinstatement and which then was pending in the United States District Court for the District of Maryland, Mr. Azrael believed that Bar Counsel had not sufficiently communicated with his client about the client's allegations against the respondent or sufficiently investigated the respondent's representations with regard to that litigation. *Id.* at 4–5, 944 A.2d at 1116–17. His purpose in seeking to intervene, he said, was to

---

**2.** Maryland Rule 16–781(i) provides:

"Further proceedings. If the Court of Appeals orders further proceedings, the Court shall enter an order designating a judge in accordance with Rule 16–752 to hold a hearing. The judge shall allow reasonable time for Bar Counsel to investigate the petition and, subject to Rule 16–756, take depositions and complete discovery. The applicable provisions of Rule 16–757 shall govern the hearing, including the requirement that the petitioner shall have the burden of proving the averments of the petition by clear and convincing evidence. The applicable provisions of Rules 16–758 and 16–759, except section (c) of Rule 16–759, shall govern any subsequent proceedings in the Court of Appeals. The Court may order (1) reinstatement, (2) dismissal of the petition, or (3) a remand for further proceedings."

When read in context with section (h), which references this section (i), it seems clear that the further proceedings contemplated are those ordered in connection with a reinstatement petition, rather than those to be ordered after reinstatement, on a motion to vacate.

**3.** Bar Counsel advised the Court:

"Still pending is litigation in the United States District Court for the District of Maryland with trial set for July 10, 2007. The Petitioner advises that he anticipates the parties will be able to settle the matter without a trial. It involves a claim by the Petitioner against a Christopher A. Brooks and a counter claim by Mr. Brooks against the Petitioner involving investment in a piece of property in Hyattsville, Maryland."

"give his client the opportunity to testify and afford the hearing court the opportunity to consider, in light of that testimony and documentary evidence, whether the respondent 'has engaged in any other professional misconduct since the imposition of discipline.'" *Id.* at 4–5, 944 A.2d at 1117. Of interest in that regard, Azrael suggested, among others, inquiry into whether the respondent forged Brooks' name to legal documents in connection with the real property at issue in the federal litigation, including a deed to that property, and, having done so, made a false oath by notarizing the forged signature.

Although "essentially neutral, neither recommending reinstatement nor opposing that relief," when responding to the respondent's reinstatement petition, *Adams,* 404 Md. at 5, 944 A.2d at 1117, Bar Counsel joined with Azrael in requesting a hearing "concerning whether the Order granting reinstatement should be revoked" and, like Azrael, requested that it be held after the trial pending then in the federal court had taken place, when "there will be testimony by [the respondent] and [Mr. Azrael's client] under oath ... which may have some bearing on the resolution of the motion." *Id.*

In his response to this Court's Order to Show Cause, the respondent denied that Azrael, opposing counsel in pending litigation, had the "right or authority" to prosecute a petition to vacate the respondent's reinstatement to the practice of law. *Adams,* 404 Md. at 6, 944 A.2d at 1118. Citing Rule 16–781(m),[4] he acknowledged and conceded Bar Counsel's authority and right to do so:

---

4. Rule 16–781(m) provides:

"Motion to vacate reinstatement. Bar Counsel may file a motion to vacate an order that reinstates the petitioner if (1) the petitioner has failed to demonstrate substantial compliance with the order, including any condition of reinstatement imposed under Rule 16–760(h) or section (j) of this Rule or (2) the petition filed under section (a) of this Rule contains a false statement or omits a material fact, the petitioner knew the statement was false or the fact was omitted, and the true facts were not disclosed to Bar Counsel prior to entry of the order. The petitioner may file a verified response within 15 days after service of the motion, unless a different time is ordered. If there is a

"Rule 16–781(m) provides that *Bar Counsel* may file such a motion for reasons stated in the Rule. The Rule does not give standing to members of the public or attorneys to file motions directly with this Court, and clearly contemplates a motion being filed only by Bar Counsel, with the information sources and investigative capacity of that office."

The respondent also argued that there was no basis shown to vacate his reinstatement. In support, notwithstanding that the federal case did not settle, as he had predicted, and the trial court made factual findings against him,[5] he noted that there were no allegations that he failed to comply with the order of reinstatement or knowingly made a false statement or material omission in the Petition for Reinstatement he filed, the only grounds in the Rule for striking reinstatement.

We agreed with the respondent. Accordingly, we dismissed Azrael's motion. Looking at the Rule, we reiterated the two reasons it prescribes for vacating an order reinstating a disbarred or suspended attorney: "when the petitioner fails substantially to comply with the order of reinstatement and when the petition for reinstatement contains a false statement or omits a material fact, which the petitioner knew to be false or omitted and did not disclose to Bar Counsel prior to entry of the order." *Adams*, 404 Md. at 10, 944 A.2d at 1120. We also concluded, as the respondent also had argued, that the only provision made for who may file a petition to vacate the

---

factual dispute to be resolved, the court may enter an order designating a judge in accordance with Rule 16–752 to hold a hearing. The judge shall allow reasonable time for the parties to prepare for the hearing and may authorize discovery pursuant to Rule 16–756. The applicable provisions of Rule 16–757 shall govern the hearing. The applicable provisions of Rules 16–758 and 16–759, except section (c) of Rule 16–759, shall govern any subsequent proceedings in the Court of Appeals. The Court may reimpose the discipline that was in effect when the order was entered or may impose additional or different discipline."

**5.** In the federal trial, the trial court ruled against the respondent with regard to his authority to enter a real property transaction on Mr. Brooks' behalf, finding his testimony not to be credible, while finding Mr. Brooks to be credible. The respondent disagrees with the findings, which he stated he fully intended to challenge on appeal.

reinstatement order is for Bar Counsel to do so. Limiting, in the way the Court did, the bases for vacation of reinstatement and who may pursue that remedy, we explained:

"... is logical and appropriate. The motion to vacate an order reinstating an attorney is, after all, like the petition to reinstate an attorney's privilege to practice law, simply a part, albeit an important part, of this Court's regulation of the legal profession, specifically, its regulation and oversight of attorney discipline, in which Bar Counsel necessarily plays a critical and extensive role."

*Id.* at 10–11, 944 A.2d at 1120. We then concluded:

"The motion to vacate filed in this case was not filed by Bar Counsel. Indeed, Bar Counsel has yet to file any such motion. Rather, as we have seen, it was filed by counsel for the plaintiff in litigation pending against the respondent. Nor was the basis for the motion to vacate a failure on the part of the respondent to comply with the conditions the Court imposed for reinstatement. Instead, the movant alleged failure of Bar Counsel to investigate a complaint that the movant filed against the respondent, to communicate with him or his client, the complainant, regarding the allegations made against the respondent in that complaint and to verify, with him or the complainant that the pending litigation involving the respondent and the complainant, the pendency of which was reported to the Court, would be able to be settled without a trial."

"To be sure, the concerns of a complainant, raised in a complaint to Bar Counsel, filed prior to the respondent's suspension, but which had not been investigated when the respondent was reinstated, and with whom Bar Counsel had not spoken with respect to the respondent's motion for reinstatement, are properly considered and may inform the question of the respondent's character and present fitness to practice law. There exists an avenue for considering those concerns. That avenue is not this Court's entertaining a petition to vacate filed by a third party, after the respondent has been reinstated, presumably after the required investigation has occurred. The avenue is Bar Coun-

sel, to whose attention the concerns of the third party can, and should, be brought, the expected result of which would be an investigation. That investigation would reveal whether there is a basis for vacation of reinstatement and whether that relief should be sought. The avenue is still open."

Id. at 12–13, 944 A.2d at 1121–22.

Within the month of the filing of the Court's opinion, accepting what he perceived to be the Court's invitation, Bar Counsel filed his Motion to Vacate Reinstatement. In that motion, he alleged:

"Mr. Adams failed to disclose that the pending litigation involved an allegation, readily admitted by Mr. Adams, that he had appended the name of Dr. Christopher A. Brooks to an offer to purchase and contract of sale without Dr. Brooks' knowledge. Additionally, Mr. Adams notarized the signature of Dr. Brooks which Mr. Adams had signed."

In support of that allegation, Bar Counsel recounted what had occurred in the United States District Court when the case between Dr. Brooks and the respondent was tried: in a memorandum opinion, the trial judge found in favor of Dr. Brooks and against the respondent, notably finding, as Dr. Brooks had alleged and contrary to the respondent's litigation position, that the respondent executed the offer to purchase and contract of sale without authorization from Dr. Brooks and without having submitted those documents to him. Of further significance to Bar Counsel was the fact that the trial judge determined that the respondent engaged in deceptive conduct and that his testimony was not credible.[6] Bar Counsel added that the respondent signed Dr. Brooks's name, presumably again without authorization, to a lease entitling a

---

6. The trial judge also found:
   "Mr. Adams admits that he signed Dr. Brooks' name to the deed of trust and the deed of trust note and then notarized those signatures by signing his own name' although less serious, Mr. Adams also notarized Dr. Brooks's genuine signature on the first time home buyer declaration, even though he had not seen Dr. Brooks sign the paper, and placed an incorrect date on the notary certification."

third party to occupy the premises at issue and giving that person an option to purchase.

Thus, Bar Counsel concluded that the respondent did not disclose the "true facts" concerning the litigation to him prior to the Order of Reinstatement being entered, either in respondent's Reinstatement Petition or in response to the inquiry Bar Counsel made of the respondent with respect to the status of the federal litigation. Bar Counsel asks this Court to revoke the respondent's reinstatement.

Responding to the Motion, the respondent urges its denial. Although he concedes, as he must, that the federal trial did not go as he would have liked and that the findings of the trial judge were, to say the least, adverse to him and his future prospects with regard to that litigation, he maintains, nevertheless, that Bar Counsel has failed to carry his burden under Rule 16–781(m) of showing that the respondent did not substantially comply with the reinstatement order or that he knowingly made false statements or omitted material facts in his petition for reinstatement. Indeed, the respondent asserts that Bar Counsel made no such allegations, opting instead to rely on the argument that the respondent supplied incomplete information and, in that way, ran afoul of the Rule. That rationale does not suffice, the respondent submits, because, given the information he supplied to Bar Counsel, and especially when that information is considered in conjunction with that which Bar Counsel received from other sources, Bar Counsel was not knowingly misled; the respondent "certainly did not know that any material fact was unknown to Bar Counsel."

Alternatively, the respondent argues that the adverse decision at trial, having been rendered after he was reinstated and being based on a burden of proof and standard of proof not applicable to disciplinary proceedings pursuant to Rule 16–757, should not be considered. More particularly, he reasons:

"Mr. Adams was reinstated by Order of this Court dated April 11, 2007. On the second page of the Motion, Bar

Counsel refers to an opinion by Judge Chasanow, which was rendered on July 25th, 2007. Certainly, Mr. Adams did not know at the time of his petition or submissions to Bar Counsel what Judge Chasanow would rule, and he does not believe that her decision is correct. Judge Chasanow's decision was more than three months after the Order of Reinstatement. Whether or not that decision is reversed on appeal, it did not predate the Order of Reinstatement, and should not be considered under part(2) of Rule 16–781(m), or in any other disciplinary proceeding."

■ Maryland Rule 16–781(m) controls our decision in this case. It provides:

"Motion to vacate reinstatement. Bar Counsel may file a motion to vacate an order that reinstates the petitioner if (1) the petitioner has failed to demonstrate substantial compliance with the order, including any condition of reinstatement imposed under Rule 16–760(h) or section (j) of this Rule or (2) the petition filed under section (a) of this Rule contains a false statement or omits a material fact, the petitioner knew the statement was false or the fact was omitted, and the true facts were not disclosed to Bar Counsel prior to entry of the order. The petitioner may file a verified response within 15 days after service of the motion, unless a different time is ordered. If there is a factual dispute to be resolved, the court may enter an order designating a judge in accordance with Rule 16–752 to hold a hearing. The judge shall allow reasonable time for the parties to prepare for the hearing and may authorize discovery pursuant to Rule 16–756. The applicable provisions of Rule 16–757 shall govern the hearing. The applicable provisions of Rules 16–758 and 16–759, except section (c) of Rule 16–759, shall govern any subsequent proceedings in the Court of Appeals. The Court may reimpose the discipline that was in effect when the order was entered or may impose additional or different discipline."

We reiterate what we said in *Adams*, 404 Md. at 10, 944 A.2d

at 1120, and hold,[7] by its terms, the grounds for vacating an order reinstating an attorney are failure of the attorney to comply with the reinstatement order, including any condition of reinstatement, the making, knowingly, of false statements or the knowing omission of material ones and not revealing[8] the true facts to Bar Counsel prior to the entry of the order.

Bar counsel does not allege that the respondent failed to comply substantially with the reinstatement order. Nor does he contend that the respondent made any false statements in his reinstatement petition. He faults the respondent's disclosure in only two particulars: (1) for not disclosing that, in the pending litigation involving Dr. Brooks, it was alleged that the respondent "had appended the name of Dr. Christopher A. Brooks to an offer to purchase and contract of sale without Dr. Brooks' knowledge" and (2) for not disclosing that he "notarized the signature of Dr. Brooks which [the respondent] had signed." It was on these premises, buttressed by the findings of the trial judge after trial, that Bar Counsel concluded that the respondent did not reveal the true facts to him prior to the issuance of the reinstatement Order. Thus, Bar Counsel relies on the second of the tests prescribed by Rule 16–781(m). And, applying that test, he submits, in effect, that, in addition to revealing the existence of the litigation itself and its nature, the respondent must also advise Bar Counsel of the precise theory on which the opposition party relies to establish his liability.

Turning then to this second test, we hold that the complete non-disclosure by a respondent to Bar Counsel of a

7. The issue in *Attorney Grievance Comm'n v. Adams*, 404 Md. 1, 944 A.2d 1115 (2008) was a different one, who may move to vacate an Order of Reinstatement. Although we commented on the grounds, that was not our holding.

8. The Rule does not unambiguously place the onus on the petitioner for reinstatement to reveal the true facts to Bar Counsel, it simply provides that "true facts were not disclosed to Bar Counsel prior to entry of the order." Certainly when the petition for reinstatement does not disclose the true facts, the non-disclosure aspect of the Rule has been satisfied.

fact or set of facts relevant to the disposition of his or her reinstatement petition is, per se, a violation of the test. Where, however, the allegation is that disclosure was incomplete, a respondent will be found to have violated the test only when it has been determined by the Court that the disclosure was indeed incomplete and that what was not disclosed was not simply relevant to the inquiry, but was material to it.[9]

In this case, that there was pending against the respondent in federal court a lawsuit alleging that the respondent defrauded a complainant, against him was a set of facts relevant and material to the disposition of the respondent's reinstatement petition. As we have seen and we shall reiterate, this the respondent disclosed. Thus, Bar Counsel will prevail if the precise manner in which the respondent was alleged, and later found, to have defrauded Dr. Brooks is material and if the findings of the trial judge in that regard are the measure,

---

9. We have noted the relationship between "relevance" and "materiality." In *Wilson v. Morris*, 317 Md. 284, 291, 563 A.2d 392, 395 (1989), for example, we pointed out: '

" 'Evidence is relevant if it has any tendency to make [the] existence of a material fact more probable or less probable than it would be without the evidence. A material fact is a fact that is of legal consequence to the determination of the issues in the case.' 5 L. McLain, [Maryland Practice: Maryland Evidence] § 401.1, at 261; C. McCormick, Evidence § 185, at 541 (E. Cleary 3rd ed.1984)."

*See* also Maryland Rule 5–401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have defined "material fact" as one "the resolution of which will somehow affect the outcome of the case." *Goodwich v. Sinai Hosp.*, 343 Md. 185, 206, 680 A.2d 1067, 1078 (1996), quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608, 614 (1985) (citing *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 7–8, 327 A.2d 502, 509 (1974)).

In the case *sub judice*, the fact that the respondent was alleged to have defrauded Dr. Brooks, which also was the subject of a lawsuit in federal court, certainly is both relevant and material to the respondent's petition for reinstatement. How the defrauding was done—the means of its effectuation—is relevant, as well, but it may not be material; it may or may not be "of legal consequence to the determination of the issues in the case." Stated differently, how the fraud was done may have consequence insofar as determining an appropriate sanction is concerned, but it does not matter insofar as culpability is concerned.

and, therefore, dispositive of the question of the adequacy of the respondent's disclosure.

■ It is undisputed that the respondent disclosed to Bar Counsel that there was litigation between the respondent and Dr. Brooks pending in federal court. It is also undisputed that this litigation involved disputed title to real property. The respondent disclosed the federal litigation in his petition for reinstatement and, upon inquiry by Bar Counsel for more information, supplemented that disclosure, in the process supplying Bar Counsel with a Memorandum Opinion by the federal judge that ruled on the pre-judgment motions filed in the case. To be sure, the Memorandum Opinion, did not explicitly indicate that there was an allegation that the respondent signed Dr. Brooks' name to "an offer of purchase or a contract of sale" or that he was alleged to have notarized, as Dr. Brooks' signature, a signature he signed. Nevertheless, as the respondent argues, the opinion does make clear that the gravamen of Dr. Brooks' allegations against the respondent was that the respondent had defrauded him and acted without authority in taking title to property in Dr. Brooks' name. For example, from the Memorandum Opinion supplied by the respondent, it is clear that the respondent purchased property in Dr. Brooks' name and subsequently, still using Dr. Brooks' name, entered into two lease arrangements, the last of which included an option to buy, with a third party. How Brooks viewed the property transaction is made manifest by the federal court's summary of his position:

"Brooks concedes that he filled out some preparatory paperwork in June 1999 for the purpose of assisting Adams to obtain a loan to purchase the Hyattsville property, but says that he lost touch with Adams shortly thereafter and assumed that no further action had been taken. In December 2001, however, he discovered through a loan agent that he was in fact listed as the record owner of the property, which was then in foreclosure. Brooks, therefore, undertook action to clear his credit, but did not, however, pursue a criminal investigation or file a civil suit against Adams."

Brooks' position was stated more clearly in his counterclaim to the respondent's actions. As characterized by the court, Brooks sought "to void the purchase option on the grounds that Adams had no authority to act as his agent and that, in entering into the purchase option with Murray, Adams sought to defraud Brooks of his interest in the property." Finally, the court's discussion of whether Brooks was entitled to summary judgment on the issue of the option to purchase is also relevant. Denying the motion, the court acknowledged that "whether [the respondent] had authority as Brooks' agent to grant the option" was a potential issue at trial.

Moreover, there was in Bar Counsel's reinstatement file a letter from Dr. Brooks, dated June 30, 2003, lodging a "formal complaint" that the respondent had committed "identity theft" against him and, in that regard, specifically accusing the respondent of signing his (Brooks') signature without his knowledge, consent or authorization. Although acknowledging that he participated in some preliminary steps with regard to the purchase of a house and filling out some preliminary paperwork, Dr. Brooks claimed to have lost contact with the respondent for a time, only to learn later that a house in Hyattsville "had been purchased in my name, utilities had also been added at the residence (in my name) and there was an outstanding bill which also appeared on my credit report as unpaid." Subsequently, he continued, he became aware that the respondent "had signed my name on several forms (without my knowledge, consent or authorization), and proceeded to a house closing on the Hyattsville property in September 1999! He apparently did so posing as me, because I was completely unaware of these activities." Dr. Brooks further informed Bar Counsel:

"When I received a copy of the application form from Countrywide, I became fully aware of the extent of the identity theft. Mr. Adams had not only forged my name, he had rented the property (with me as the 'owner' and him acting as agent). To my knowledge, the property is still occupied. I have in no way benefitted from this property, and until December 2001, had no knowledge of being its

'owner.' There are forms enclosed where he appears to have signed my name and notarized them himself."

On this record, Bar Counsel was fully aware, or should have been, of the nature and gravity of the allegations being made against the respondent in the federal litigation. From the record, it is clear that the respondent was being charged by Brooks with defrauding him, by stealing his identity, by acting on his behalf for the purchase of real property without authorization and by signing his name without his consent, knowledge or authorization. Viewed from this perspective, even without knowing the precise method by which the defrauding was accomplished, Bar Counsel had the "true facts" in advance of the entry of the order reinstating the respondent. What was relevant and material was the alleged scheme and its implementation. How it was to be accomplished, precisely, while relevant, was not material.

Bar Counsel does not agree. He believes that how the fraud was committed is material and implicitly, if not expressly, that the federal trial judge's factual findings on the merits, after trial, are the measure, and therefore, dispositive, of whether the respondent adequately disclosed. That cannot be right. Neither party in litigation is expected to predict the outcome of the trial in which they are parties; neither are they required to guess, really, speculate, how the trier of fact will resolve the contested issues. As the respondent points out, when he was reinstated, the Court had been apprised, as had Bar Counsel, of the pending litigation in federal court, including its nature. Although the respondent anticipated that the case would settle, it did not and, indeed, the case was not resolved by trial until several months after the respondent had been reinstated. The respondent is correct, the findings of fact on the merits, even if they were final and not subject to appeal, could not render disclosures, adequate when made, incomplete and subsequently inadequate.

By parity of reasoning, parties to litigation that terminates in a contested trial are not obliged, in any event, to acquiesce in findings made by a trial judge after a contested trial.

Indeed, the appellate process exists to allow the party aggrieved by the findings to challenge them. Thus, even were we to hold that, for purposes of Rule 16–781(m), the true facts are those found by a trial judge after trial, it would not result in the vacation of reinstatement unless the findings were made before reinstatement and the respondent did not inform the Court or Bar Counsel of that fact.

Accordingly, Bar Counsel's Motion to Revoke the Respondent's Reinstatement is denied.

**IT IS SO ORDERED.**

HARRELL, BATTAGLIA and RAKER, JJ., Concur.

Concurring Opinion by HARRELL, J., which BATTAGLIA and RAKER, JJ., join.

Although I agree with the Majority opinion, I write separately to note my view that, although Bar Counsel may not have persuaded the Court to vacate Adams's reinstatement under Rule 16–781(m), Bar Counsel is not foreclosed from initiating a new investigation and disciplinary action (if appropriate) as to alleged misconduct (if any) by Adams relating to the transactions involving Brooks occurring after the date of the Court's 11 April 2007 order of reinstatement.

Judges BATTAGLIA and RAKER have authorized me to state that they join in the views expressed in this concurrence.